The counsel for the appellant relied on two points. 1. That Watson was an improper juror. 2. That the verdict rendered was not the verdict of tile whole jury, but of a part only.
As to the first point. If the objection to Watson had been known before he was sworn, he would have been set aside; for, though a juror is not related to either party nor has shewn any marks of partiality, yet if there be sufficient reason to suspect that he may be more favourable to one side than the other, he ought not to be impanelled, (a) That Watson’s sitúa *26 tion rendered him an improper" juror, is manifest. Where from any cause, a juror leans in favor of one party on any point in the case, he is an unfit juror.' Now, in a case for words, one of the most material points is the quantum of damages; and Watson would naturally incline to extend to the utmost limit the damages of the plaintiff Bell. He himself felt the influence **of these considerations, and even objected to himself. The Plaintiff’s counsel refused to permit him to be withdrawn; a strong evidence of his conviction of the operation of these motives on Watson’s mind. To test the principle, let us suppose the whole twelve had been in Watson’s situation. Could it have been reasonably expected that Shobe would have had justice?
Tucker, replied.
In actions of this sort, a scrupulous attention to the impartiality of the jury is peculiarly necessary. The jury are the proper judges of the damages, and the court will rarely interfere for excess of damages. It is therefore all important, that the jury which is invested with such high power should be above all suspicion of partiality or excitement. In cahses of another description, some standard or measure is furnished by which to judge whether they are right or wrong. Here there is no standard. New trials ought in such cases to be more freely indulged, because they can do the plaintiff no harm and may contribute to justice. In 1 Strange, 672, the court assigned as their only reason for granting, a new trial that “it was fit the defendant should try another jury, before he should be finally charged with such heavy damages.” The evidence did not maintain the charge, and the damages were disproportionate to the offence. But the jury, not being “above all suspicion,” inclined to the worst interpretation.
2. The verdict is not the verdict of the whole jury, but of part only. This is in fact clearly proved by the testimony of four of the jury. They first formed an aggregate of the different sums and then divided by 12. This gave $487. They then fixed on $450, either for round numbers or to veil the transaction. This is a mockery of justice.
But the verdict was rendered by three of the jurors, under an impression that they must yield to the majority, one of them having been only for $30 or $50, and yet rendering the verdict for $450. Here was no assent of *the mind. The cases in 1 Term Rep. 11, and 1 Wash. 76, may be cited. But the latter case is in our favor; for, there a new trial was granted, even in chantery. Here there is no tampering with the jury. The information was received when the jury returned with the verdict. In Cochran v. Street, there had been time for tampering. So where a motion for a new trial is made in England in Westminster Hall, time for tampering is afforded between the trial and the term which follows it. Here there was none, and no reasonable objection can be offered to the juror’s affidavit.
For the appellee it was said, that it was no disqualification Of Watson that he had an action of slander pending, unless it had been with one of the parties in this suit. The doctrine as laid down in Co. Litt.(b) is, that if a juror has a part of the land depending on the same title with the land in controversy, it will be a good cause of challenge; but surely not that he has an action in ejectment with other parties. It is also said in Co. Litt.(c) that no challenge can be received after a juror is sworn, except for matter arising after he is sworn; not for matter, only discovered afterwards. The candid manner in which he disclosed his situation, proves him to have been upright and conscientious.
As to the objection that the jury divided by 12, it is expressly disproved that they did so. divide. Besides, in actions like the present, where no certain standard exists for fixing the damages, it would be difficult for juries ever to agree, unless they adopted some such principle of accommodation. As to the danger which seems to be apprehended as resulting from this mode of decision, it ought not to be anticipated that men of good character, and without interest, would resort to such unworthy arts to carry a point of mere opinion, by which they are not to derive any benefit. But, as they rejected this mode of decision, *and finally agreed on a less sum, it is plain that they consulted their ideas of propriety, and rendered a verdict as nearly satisfactory to all, as can ever be attained in a case of this sort. With regard to the motive which, it is said, influenced three of the jurors, it would be highly dangerous to enter into such a nice scrutiny of the motives of jurors, when they do not amount to gross mistakes of law, or breach of duty. It is highly improper to meddle with verdicts on such grounds, and Ford Mansfield refused to hear evidence of it in Vaise v. Delaval.(d) The case of Cochran v. Street, was an actual mistake of four jurors, who thought the opinion of the majority absolutely imperative on them. In Price’s ex. v. Warren (e) a new trial was refused on the affidavit of two jurors that the verdict was rendered on the statement of one of the jury, not upon oath, because it was deemed dangerous to meddle with verdicts.

 3 Bac. Abr. 253.

 p. 15?.

 p. 158.

 1 Term Rep. 11.

 1 H. & M. 885.