Bishop *vs.* The State of Georgia.

No. 26.—BRINKLEY BISHOP, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant.

[1.] A witness may be interrogated as to the state of his feelings toward a party, in order to show the bias under which he testifies; it is not admissible, however, to inquire into the cause of his hostility.

[2.] When the dispute is as to localities, a diagram, drawn in accordance with the testimony of a witness, may be submitted to the Jury without having been first exhibited to the witness whose evidence it contradicts.

[3.] A new trial will not be granted, in consequence of the admission of illegal testimony, where such testimony was suffered to go to the Jury without objection, either on its introduction or in the argument of the case.

[4.] The affidavit of a Juror will not be received to impeach his verdict.

[5.] When a Juror is put upon triors, it is not proper for *counsel* to ask him any other questions than those propounded by the Act of 1843.

[6.] Where the offence has been recently committed, and the party accused imprisoned during the whole time which has intervened between his arrest and trial, it is good cause of continuance in a capital case, at the first term after the bill is found, that the defendant cannot come safely to trial on account of the excitement existing in the public mind against him. And the affidavit of the prisoner, when made and filed in terms of the law, cannot be contradicted or traversed, either by a cross examination or *aliunde* proof.

[7.] It is ground for a new trial, if one of the Jurors, before the trial, makes declarations which clearly indicate that he is not above all exception, and that his opinion is not a hypothetical one—dependent upon the *whole* proof —but formed, exclusively, in reference to the evidence which shall be adduced on the part of the prosecution.

Indictment for murder, in Bibb Superior Court. Tried before Judge STARK, January Term, 1850.

The defendant was indicted at the January Term, 1850, of Bibb Superior Court, for the killing of one Turner Smith, on the eighth day of December, 1849. The cause came on for trial at the same term of the Court, when the defendant moved the Court for a continuance of his cause, upon the ground stated in his written affidavit, to wit: "That he cannot go safely to trial, because such is the excitement in the public mind, and so excited is public feeling against him, as he has been informed and believes, that he has more to fear, and does fear that he cannot obtain a

fair trial." In answer to questions propounded by the State on a cross examination, defendant stated, that he made the statement, contained in his affidavit, from information received from persons while he was in jail; that he had been confined in jail since the 8th day of December; that he remembered the names of but two persons who gave him information on the subject. One was Patrick Cunningham, who told him the day before, "that there was a heavy weight against him." The other was Hezekiah McKinney, who told him sometime after his confinement, "that public opinion was against him." Defendant farther stated, that he did dot know that any one had stated to him that public opinion was so excited that he could not have justice done him.

The Court overruled the motion for a continuance, and ordered the trial to proceed.

In the progress of the trial, John P. Lamar was introduced as a witness by the defendant. Upon his cross-examination, in answer to a question propounded by the State, witness stated that "he was not on friendly terms with Turner Smith, the deceased." Counsel for the defendant then proposed to ask the witness as to the reasons of his hostility to the deceased, which was overruled by the Court.

Richard Bassett, a witness for the defendant, testified as to the localities of the place at which, and the relative situation of the parties at the time the killing was perpetrated.

By way of rebuttal to the testimony of Bassett, the State introduced a " diagram," based upon the testimony of ——————— a witness for the State, without having first submitted the diagram to Bassett—said diagram being at variance with the testimony of Bassett as to the place and position of the parties at the time the killing was done.

The Jury returned a verdict of guilty, with a recommendation of the prisoner to the mercy of the Court.

Counsel for the defendant then moved the Court for a new trial, upon several grounds, of which the decision of this Court renders it only necessary to state the following:

1st. Because the Court refused to allow counsel for prisoner

to ask John P. Lamar why he was unfriendly to the deceased, after the counsel for the State had been permitted to ask him if he was unfriendly.

2d. Because the Court allowed a diagram to go in evidence to contradict the testimony of Bassett, which was not exhibited to Bassett.

3d. Because David Smith, Jr. one of the Jurors who tried the cause, was induced to agree to the verdict by the persuasion of his fellows, by misrepresenting to said Juror the effect of the verdict rendered, he being assured by some of his fellows that a general verdict of "guilty, with a recommendation to the mercy of the Court," would authorize the Court to commute the punishment from death to imprisonment in the penitentiary.

4th. Because the Court erred in refusing the counsel for prisoner the right to examine the Juror when put upon triors.

5th. Because the Court erred in refusing to grant a continuance of his cause to the prisoner, upon the grounds stated in his affidavit, " as to the excitement existing in the public mind against him."

6th. Because Madison Malsby, one of the Jurors who tried said cause, was biased and prejudiced against the defendant ; and so far prejudiced, as to be unable to do justice to the defendant.

Upon the hearing of the motion for a new trial, the defendant submitted the affidavit of David Smith, Jr. in which he stated that he was induced to agree to the verdict for the reasons stated in the third ground taken in the motion.

Defendant also submitted the affidavits of Henry B. Page, James B. Cooper and Zachariah Holloman, who stated, "that they heard Madison Malsby, one of the Jurors who tried the cause, on the Saturday before he was impanneled on the Jury, say that if he was on the Jury, he would hang Bishop and burn Smith (who was also indicted, but not put upon his trial.)

Counsel for the State then submitted the affidavit of Madison Malsby, the Juror, in which he stated, " that in a conversation with Page, Cooper and another individual by the name of Keel, on the Saturday previous to the trial, he said that if such testimo-

ny was given before the Court, as he had heard could be brought in, he would stay there until hell freezed over, or hang them," (meaning Bishop and Smith.)    He further stated in his affidavit, " that on the trial of the cause, he acted under neither bias nor prejudice, and was solely governed by the law and the testimony delivered on oath upon the trial before the Court, and that he was put upon the Jury without ever having been placed upon his *voire dire*, or questioned as to his competency as a Juror by the prisoner or the State.    Deponent further swears, that in a conversation with James B. Cooper, in the presence of Francis Wells, on Sunday last, he told Cooper that he was summoned, but did not want to serve on the Jury, for if they (meaning the prosecution) made such proof, as he understood they could make, he would stay there until he rotted, or until hell burned down, but he would hang them."

The affidavits of Ardin Keel and Francis Wells were also submitted by the State to corroborate and sustain the statements of Malsby, the Juror.

The Court overruled the motion for a new trial, and counsel for the defendant excepted.

THOMAS P. STUBBS and WM. K. DEGRAFFENREID, for plaintiff in error.

Sol. Gen. McCUNE, HALL, and POE & NISBET, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The first error complained of in the proceedings of the Court below in this cause is, that the Court refused to allow counsel for the prisoner to ask John P. Lamar, a witness for the defendant, why he was unfriendly to the deceased, after the State's attorney had been permitted to inquire of him if he was not inimical to the deceased.    The question asked the witness was properly propounded for the purpose of showing the bias under which he testified ; but it does not occur to us, what good or le-

gal object could have been subserved by instituting an inquiry into the cause of the hostility entertained by the witness toward the deceased. It may have answered, to be sure, to have justified him, in the opinion of the Jury and others, but not in any way to elucidate the truth of the issue which they were trying; on the contrary, by entering into particulars as to the origin of the feud, statements might have been made which could not be rebutted, and thus improperly have prejudiced the minds of the Jury against the prosecution. We do not deem this assignment of error sufficient to affect the judgment.

[2.] It is insisted, in the second place, that the Court erred in allowing a diagram to go before the Jury, to contradict the testimony of Bassett, which was not exhibited to the witness.

[3.] It appears from the record, that this testimony was suffered to go to the Jury, without objection, either on its introduction or in the argument of the case. The illegality, then, is waived, and a new trial will not be granted in consequence of its admission. Had this proof been objected to, it might not have been pressed, and if pressed, might have been excluded by the Court. It will never do to permit a prisoner to hear illegal testimony without objection, and then assign its introduction as error; by such indulgence, advantage will always be taken of the prosecution. 4 *Shep.* 187. 4 *Humph.* 27. 5 *Blackf.* 436.

But apart from this rule, upon what principle was it necessary to exhibit the diagram, submitted to the Jury, to Bassett? He had testified to the localities where the homicide was committed. Another witness is introduced, who gives a different statement, and a plat is made out in accordance with his evidence. It is not the *paper*, but the *proof* upon which it is made out, that contradicts Bassett. Had the prisoner considered it material, Bassett could have been called back and re-examined as to this matter of discrepancy. This, then, cannot be regarded as error.

[4.] It is next urged as error, that the Court refused to receive the affidavit of David Smith, Jr. one of the Jurors who tried the cause, to impeach the verdict. He does not deny the guilt of the accused, but states, that he was induced to agree to the verdict,

by the persuasion of his fellow-jurors, and by their misrepresentations as to the effect of the verdict.

In *Monroe's Case*, (5 *Kelly & Cobb*, 141,) although the point was not directly made, I ventured the opinion, that while the Jury would be heard in their vindication, they would not be allowed to impeach their own verdict. The argument now submitted has satisfied me of the soundness of that conclusion. I admit that the ancient law and practice was the other way.· *Phillips vs. Fowler*, 1 *Barnes*, 441, 8 *Geo*. *II*. *Parr vs. Seames*, 1 *Barnes*, 438. *Aylett vs. Jewell*, 2 *Wm. Black.* 1279. *Bellish vs. Arnold*, *Bunb.* 51. And in *Smith vs. Chetham*, (3 *Caines*, 57,) *Spencer*, J. says, " on examining the English authorities, prior ·to the revolution, it appears to me that the information of Jurors, as to what passed, may be received."

I will not refer to the case of *Price vs. Powers*, (1 *Keble*, 811,) which was a decision to the contrary, as early as the reign of *King Charles II.* since Mr. Justice *Park*, after hearing Lord *Kenyon's* censures upon *Keble's Reports*, burned his copy, " not thinking it worth while to keep a refuse book in his library;" and Lord *Campbell* calls *Keble* " a drowsy sergeant, known only for some bad law reports." Still, it is very certain that before the epoch of our revolution, and at least as early as 1770, the doctrine in England was distinctly ruled the other way, and has so stood ever since. In *Rex vs. Almon*, (5 *J. Burrows*, 2686,) *tried that year* on a motion for a new trial in the King's Bench, Sergeant *Glynn* prayed that the affidavit of Mr. *Mackworth*, one of the Jurors, might be read, to show that he rendered his verdict under a mistake; but the emphatic reply of Lord *Mansfield* was, " *you know it cannot be read.*"

In the subsequent case of *Vaire vs. Delaval*, (1 *Term R.* 11,) Lord *Mansfield* said, the Court cannot receive an affidavit from any of the Jurymen themselves, as to their misconduct; but in every such case, the Court must derive its knowledge from some other source.

Concede the most, then, that can be claimed,· in May 1776, when our Adopting Statute took effect, the law in England, to borrow a term from geology, was in a *transition* state, and that

Bishop *vs.* The State of Georgia.

being the case, we are at liberty to exercise our own discretion in respect to it.

It is admitted, that notwithstanding a few adjudications to the contrary, (*Warner vs. Roberson*, 1 *Root*, 194; *Gunnell vs. Phillips*, 1 *Mass. Rep.* 541; *Shobe vs. Bell*, 1 *Rand.* 39; *Elledge vs. Todd*, 1 *Humph.* 44,) that it is now well settled, both in England, and with the exception of Tennessee, perhaps, in every State of this confederacy, that such affidavits shall not be received, and, we believe, upon correct reasoning. If the doctrine contended for was once established, but few verdicts could stand. It would open the widest door for endless litigation, fraud and perjury, and is condemned by the clearest principles of justice and public policy.

We reject this ground, then, as totally insufficient to obtain a new trial.

[5.] The next ground of error assigned is, the refusal of the Court to suffer the counsel for the prisoner to examine the Juror when put upon triors.

By the Act of 1843, two questions, and, as we think, *two only*, are allowed to be propounded to the Juror, upon his *voire dire*, by counsel, to test his competency; and, notwithstanding his answer, the State, or the prisoner either, has the right to put such Juror upon his trial in the manner pointed out by the Common Law, and *to prove* such Juror incompetent; but this must be done, we apprehend, by *aliunde* testimony. We would not be understood as denying the right of the triors to interrogate the Juror.

This ground, therefore, cannot be supported.

[6.] But it is urged, that the Court erred in overruling the motion for a continuance—the prisoner swearing that the excitement against him was such as to prevent a fair trial.

In *Howell vs. The State*, (5 *Ga. R.* 53,) this Court intimated that this would be a good ground of continuance, at least at the first term of the Court, and when the offence had been but recently committed. Considering the facts of this case, that this was the first term of the Court after the indictment was found; the prisoner put upon his trial the next month after the offence

was committed; that he was imprisoned in jail during the whole of the intervening time; the known excitement which usually exists upon the perpetration of a great crime; and that the venue cannot be changed—we are unwilling to relax the rule and bring parties into trial, under such adverse circumstances. And when it is recollected, that a half year's close confinement will be the consequence of this postponement, it is sufficient security, perhaps, that this indulgence will not be abused. But let the depravity of the criminal be ever so great, and the fact of his guilt ever so apparent, if he offers to the Court sufficient reasons, he is entitled to obtain a postponement of his trial.

In a case of murder, committed in Newcastle-upon-Tyne, which had created great excitement, and it appeared that the Jurors were chosen from within a circle of fifteen miles round Newcastle, *Alderson and Parke*, BB. postponed the trial until the following Assizes. *Bolan's Case, Newcastle Spring Assizes*, 1839. The same doctrine is also recognized in *Jollyfer's Case*, (4 *T. R.* 285.) And how beautifully is this principle illustrated in that humane provision of British jurisprudence, which, adjudging an attack upon the King to be parricide against the State, and that the Jury and witnesses, and even the Judges are the children, deems it fit, on that account, that there should be a solemn pause before proceeding to judgment—a legal *quarantine* before trial—lest the mind should be subject to the contagion of partial and improper affections. What a sublime spectacle of justice, to witness this statutable disqualification of a whole nation for a limited period!

But it is said, that upon a cross-examination of the prisoner by the Court, as to the sources of his information, that the written affidavit which he made, was so far qualified or discredited as to authorize its rejection; but we think that this proceeding was irregular. Had the accused submitted himself to an oral examination, it might have been otherwise; but having filed his affidavit in terms of the law, it was not competent to interrogate him farther.

Mr. *Roscoe*, in his *Treatise on Criminal Evidence*, says, where a fair and impartial trial cannot be had in the County where the

venue is laid, the Court of Kings Bench, (the indictment being removed thither by *certiorari*,) will, upon an affidavit stating that fact, permit a suggestion to be entered on the record, so that the trial may be had in an adjacent County. Good ground must be stated in the affidavit for the belief that the trial cannot be had. *The suggestion, however, need not state the facts from which the inference is drawn that a fair trial cannot be had.* Citing *Hunt's Case*, 3 *B. & A.* 444, (31 *Eng. Com. L. Rep.* 342.) *And this suggestion, when entered, is not traversable.* 1 *Chitty's Crim. Law*, 201. *Roscoe*, 236.

Believing these principles to be strictly analogous, the disallowance of this motion for a continuance cannot receive our sanction.

[7.] The only remaining question is, as to the competency of Madison Malsby as a Juror.

The general rules by which the fairness of a Juror is to be tried, are so fully stated in *Monroe's Case*, that we do not care to recapitulate them here. The affidavits submitted to the Court, by the defendant in support of his application for a new trial, establish, conclusively, the unfitness of the Juror. Nor do we think him relieved by his own statement. It is contended, that the opinion which he expressed, was predicated upon a hypothetical case; but, from an attentive consideration of all the evidence, we think otherwise. If it amounted to nothing more than the expression, simply, of an opinion upon a given state of facts, we could not only excuse the individual, but even commend him for giving utterance to his abhorrence of a great crime, supposed to have been wantonly and wickedly committed against the peace and welfare of the community of which he was a member. On the contrary, the proof shows a determination to look to the testimony *alone*, which would *in*-culpate, and not to that which would *ex*-culpate the defendant—to believe that which would *convict*, and to disregard that which would *acquit* the prisoner. Such impressions would not be easily removed, whatever facts may have been proven in favor of the accused. Who can doubt but that they would have operated injuriously to the accused? It is the pride of the Constitution of this country,

that all causes should be decided by Jurors, from whose breasts are excluded all bias and prejudice. To break down any of these safeguards, so wisely erected, and to suffer Jurors to decide upon the life and liberty of the citizen, whose minds are poisoned by passion or prejudice, would be to stab the upright administration of justice in its most vital parts. We cannot hesitate, therefore, to pronounce Madison Malsby an incompetent Juror, and that the Circuit Court ought to have awarded a new trial to the defendant on that account.

The judgment of the Court below must, consequently, be reversed and the cause remanded, and a new trial granted by the Superior Court of Bibb County.