## BARTON v. HOLMES.

1. CONSTRUCTION OF SLANDEROUS WORDS. Words charged as the foundation of an action for slander should be construed in the sense in which they were understood by those who heard them.

2. SAME: EVIDENCE OF MEANING. When words are clearly actionable on their face, evidence of the meaning of the same is unnecessary; but when the meaning is not thus clear, it is competent for witnesses who heard them to testify as to the sense in which they understood them.

3. VERDICT: MISCONDUCT OF JURY. When jurors agree in advance to be bound by the result, and make up their verdict by each juror marking a sum on a piece of paper, or stating it, and the twelve sums thus marked or stated, being added together and divided by twelve, the quotient is taken as the verdict, the finding is invalid, and should be set aside. But a showing that the verdict was thus ascertained without previous agreement to be bound by the result, is not alone sufficient to invalidate the finding.

*Appeal from Washington District Court.*

TUESDAY, JUNE 7.

ACTION for slander. Trial by jury; verdict and judgment for plaintiff, for five hundred dollars; from which

Barton v. Holmes.

defendant appeals. The facts of the case are sufficiently stated in the opinion.

*J. R. Lewis* for the appellant.

1. The Court erred in permitting the witness to state his impresssion or construction of the words used. 1 Am. L. C., 165; 18 Conn., 464; 8 Car. & P., 708; 2 Greenl. Ev., § 414.

2. The misconduct of the jury in ascertaining their verdict, was sufficient cause for setting the same aside and granting a new trial.

3. The damages were excessive.

*McJunkin & Dawson* for the appellee.

1. The defendant is accountable for the impression which the words spoken by him made upon the minds of those to whom they were addressed. 2 Greenl. Ev., § 417.

2. It is competent for a witness, after stating the words spoken, to give the sense in which he understood them. 2 Starkie, Slan., 51; *Demarest* v. *Haring*, 6 Cow., 76; *Wilson* v. *Beighler et ux.*, 4 Iowa, 427; *Truman et ux.* v. *Taylor et ux.*, Id., 424.

COLE, J.—I. The petition contains four counts, setting out, in substance, the same slander. It contains the averments that defendant spoke of and concerning the plaintiff the false and slanderous words: "Hi. Barton stole my share of the corn out of the field, and I can prove it." The defendant, in his answer, 1st. Denies generally; 2d. Admits the speaking of the words, and says they are true; 3d. Avers that in 1862, he rented to the plaintiff some land, and agreed to take one third of the crop raised for his rent; that plaintiff cultivated the land in corn, and cut up his share and left defendant's share standing, and while plaintiff was afterwards hauling off his shocks of corn, he would pull defendant's corn and fill his wagon bed part full, and

then cover it up with his own shock corn, and in that way took a large part of defendant's share of corn; 4th. Sets up counterclaim for five hundred dollars, for failure to cultivate the land properly.

On the trial, the plaintiff introduced a witness, who testified to a conversation with the defendant, tending to prove the words charged; and then asked him, "What did you understand the defendant, in said conversation, to charge the plaintiff with?" To which question the defendant objected, but the Court overruled the objection, and the witness answered, "I understood him to charge the plaintiff with stealing his share of the corn." Exceptions were duly taken, and the admitting of this testimony is assigned as the first error.

There is an undisputed conflict of authorities upon this question, and the point has never before been directly made or decided by this Court. The law pertaining to actions of slander, has undergone as much change, and probably more than that in relation to any other branch of jurisprudence. In the earlier actions of this kind, the rule was, that words were to be construed *in mitiore sensu;* the theory of the courts being, that such construction would tend to suppress litigation. Afterwards it was held, that words should be taken *in malum partem*, where they could be thus construed, so as thereby to afford legal remedies and prevent breaches of the peace, by resort to violence for redress. Still later, it was a well recognized rule, that words should be taken in their plain and natural import, and courts would construe them according to their ordinary signification. But the more modern rule, and that which appears to us to have the best foundation in reason, and to be recognized by very many of the most respectable authorities is, that the words should be construed in the sense in which the hearers understood them. 2 Greenl. on Ev., § 417, and note 4; 2 Starkie on Slander, 51 and 52; *Becket*

Barton v. Holmes.

v. *Sterrett*, 4 Blackf., 499; *Dexter* v. *Taber*, 12 Johns., 239; *Ex parte Baily*, 2 Cow., 479; *Phillips* v. *Barber*, 7 Wend., 439; *Demarest* v. *Haring*, 6 Cow., 76; *Kennedy* v. *Gifford*, 19 Wend., 296; *Ayers* v. *Grider*, 15 Ill., 37; *McLaughlin* v. *Russell*, 17 Ohio, 475; *Dodge* v. *Lacey*, 2 Carter (Ind.), 215.

Very many other authorities might be cited in support of the rule last stated; but we have cited the foregoing, they being the most convenient of access to us, as well as sustaining the view which we adopt in a subsequent part of this opinion.

II. It being established then, that the words shall be construed in the sense in which the hearers understood them, the further question, and the main one in this case is, how shall the sense in which the hearers understood them be proved? Upon this question, too, there is an irreconcilable conflict of authorities. Very many courts hold that the sense in which the hearers understood the words is to be determined by the jury solely from the words themselves, and from evidence of the facts and circumstances attending the speaking of them. While other courts hold that it is competent for the witnesses who heard the words, to testify as to the sense in which they understood them, as well as to the facts and circumstances attending their publication. The authorities cited *infra*, directly or indirectly sustain this latter view.

The main reasons given for the rejection of the testimony of witnesses as to the sense in which they understood the words, are, that it is but the opinion of the witness, and that if a party is to be liable for the construction another may place upon his language, instead of for the language which he uses, there will be no safety in conversation; and further, that corrupt witnesses might thereby involve innocent parties in utter ruin, by their professed understanding of language perfectly harmless and proper in itself. But these objections are not, in our

opinion, well founded. In the first place, when a witness testifies as to the sense in which he understood the words spoken, he does not testify to an opinion, but to an ultimate fact. The question at issue, under the more modern rule in slander, is, how did the hearers understand the words charged to be slanderous? This is a question of fact to be determined by the jury. The courts all agree that it is competent to prove the facts and circumstances attending the speaking of the words, the situation of the parties, and their relations to the subject matter or occasion of the slander, and any other portions, or all of the same conversation. This testimony is admitted, in order to enable the jury to correctly determine the ultimate fact, to wit, how the hearers understood the words used. It is not to ascertain the words, for they are directly proved; nor to learn the sense in which the speaker intended to be understood, for his intentions are immaterial, since they cannot limit the injury, or atone for the wrong; nor is it to demonstrate the correct definition of the words used, but simply to determine how the hearers understood them. Such evidence is merely circumstantial, tending to prove the ultimate fact, while the testimony of the hearer is direct evidence of the same fact. It is true that the circumstantial evidence is competent, and may be satisfactory, and even sufficient to overcome the direct testimony, but the latter is not for that reason to be rejected.

Again, the objection that by the admission of the direct testimony of the understanding of the witness, a party will be liable for the construction another may put upon his language, instead of for the language which he utters, is fully met by the observation of Lord MANSFIELD in *King* v. *Howe*, 1 Camp., 672: "It would be strange to say, and more so to give out as the law of the land, that a man may be allowed to defame in one sense, and defend himself in another; such a doctrine would, indeed, be pregnant with

the *nimia subtilitas*, which my Lord COKE so justly repro-
bates." Besides, when it is remembered that the man who
utters the language is the cause of the damage, and that
the damage results from the sense in which the witness
understood the words, the justice of holding a party re-
sponsible in such case is quite apparent. Of course, the
witness may be cross-examined fully as to the grounds of
his understanding, and much other testimony is admissible
to show that he could not have understood the words in
the sense in which he professes to have understood them
as testified to by him.

The further objection that corrupt witnesses might pro-
fess to understand innocent and proper language in a slan-
derous sense, and thereby ruin the persons using it, would
apply with almost equal force to every fact to be estab-
lished by witnesses in court. The possibility that a witness
may testify falsely should not exclude his testimony, he
being otherwise competent. The difficulty in proving the
falsity of his statement as to the sense in which he under-
stood certain words, is greater, it is true, than in many
other matters of fact. But it will be remembered that the
case need not and does not rest solely upon his testimony.
The jury may have the words themselves, the relation of
the parties to the subject matter, or occasion of the alleged
slander, the contemporaneous facts connected with the
speaking of the words, as well as a rigid cross-examination
of the witness as to his feelings towards the respective
parties, and the foundation of his professed understanding
of the words uttered, and many other facts and circum-
stances which will afford the jury the means of placing a
correct estimate upon his testimony and in connection with
it, the more certainly to arrive at the real sense in which
the words were understood by those who heard them.

The necessity for an inquiry of a witness as to the sense
in which he understood the words spoken, can only arise

where, from the words themselves, there exists a doubt as to the sense in which they were understood. In this case the words charged are clearly actionable, and so conceded by the defendant in his answer; and although the testimony in the case has not been sent up to this Court, yet the words are so manifestly slanderous, that it is difficult to conceive of any necessity for the inquiry as to the understanding of the witness, or how the answer given, could, in any way, have prejudiced the defendant. *Becket* v. *Sterrett*, 4 Blackf., 499, *supra; De Moss* v. *Haycock*, 15 Iowa, 149. That the testimony of the witnesses, as to their understanding of the words spoken, was regarded as of but little or no consequence, is apparent from instruction number four, which was asked by the plaintiff, given by the Court, and not excepted to by the defendant, to wit: " The jury must understand the words acccording to their natural import and the idea which they were, under the circumstances, calculated to convey." There was therefore no error, certainly none to defendant's prejudice, in permitting the witness to answer the question.

III. The jury returned a verdict for the plaintiff for five hundred dollars, and the defendant moved for a new trial on the ground, among others, of misconduct by the jury in making up their verdict. In support of this ground, he introduced the following affidavit of a juror as his only evidence, to wit: " I, Curtis Wells, on my oath, say, that the paper hereto attached, is the same paper used by me as foreman of the jury, in footing up and ascertaining what the average amount of the verdict in said cause would amount to, in case it was adopted ; that I was a juror in said cause." The paper attached contained a column of figures of twelve numbers, seven of which were five hundred each; two, one thousand each; and one each of one, fifty, and three hundred, footing up five thousand eight hundred and fifty-one, and divided by twelve, showing four hundred

and eighty-nine dollars and twenty-five cents.   The Court overruled the motion, and this ruling is assigned as error.

The rule is well settled, that, wherever the jurors agree in advance to be bound by the result, and make up their verdict by each juror marking a sum on a piece of paper, or stating it, and the twelve sums, thus marked or stated, being added together and divided by twelve, the quotient is taken as the verdict, such finding is bad, and will be set aside by the Court. *Warner* v. *Robinson*, 1 Root, 94; *Baker* v. *Bennett*, cited in 1 Humph., 45; *Manix* v. *Malony*, 7 Iowa, 81; *Smith* v. *Cheetham*, 3 Cai., 57; *Schanler* v. *Porter et al.*, 7 Iowa, 482; *Denton* v. *Lewis*, 15 Id., 301.   But the showing in this case falls far short of the rule.   The juror does not state, in his affidavit, that there was any agreement to be bound by the result, or that any one proposed that the result of the calculation should be taken as the verdict, but simply that it was done for the purpose of " ascertaining what the average amount of the verdict in said cause would amount to, *in case it was adopted.*"

In *Dana* v. *Tacker*, 4 Johns., 487, where the verdict was arrived at in a manner similar to this case, the Court say : " If the jurors previously agree to a particular mode of arriving at their verdict, and to abide by the contingent result, at all events, without reserving to themselves the liberty of dissenting, such a proceeding would be improper; but if the means is adopted merely for the sake of arriving at a reasonable measure of damages without binding the jurors by the result, it is no objection to the verdict."

In *Harvey* v. *Jones*, 3 Humph., 157, the Court say : "A jury may make the experiment with a view to ascertain what the amount will be, and if the amount produced give satisfaction, they may retain it as their verdict.   But they cannot agree, before the amount is ascertained, that they will abide by it; and if they do, it is an error, for which a new trial will be granted."

In *Dunn* v. *Hall*, 8 Blackf., 32, the Court say : " The law is well settled that in actions for unliquidated damages, the jury may adopt the process resorted to in this case (adding the amounts and dividing by twelve), to obtain a medium sum to be submitted as a proposition for a verdict; and it is equally well settled that it must not be adopted pursuant to an agreement to be bound by its result."

And in *Dorr* v. *Fenno*, 12 Pick., 521, the Court say : "The impropriety consists in *the agreement to be bound by the result*;" and to the same effect are the following cases : *Ellege* v. *Todd*, 1 Humph., 43 ; *Cowperthwaite* v. *Jones et al.*, 2 Dall., 55 ; *Chandler* v. *Barker*, 2 Harr., 387 ; *Grinnell* v. *Phillips*, 1 Mass., 530 ; *Shobe* v. *Bell*, 1 Rand., 39.

The affidavit in this case does not show any such previous agreement to be bound, or other impropriety in the manner of making up the verdict, as will justify a court in setting it aside, and the judgment of the District Court is

Affirmed.