## HAMILTON v. THE DES MOINES VALLEY R. R. Co.

1. **Jury and verdict:** QUOTIENT VERDICT. To render invalid a verdict arrived at by aggregating the several amounts which the different jurors are in favor of and dividing the result by twelve, there must have been an agreement on their part in advance to be bound by the verdict thus obtained.

2. —— If the verdict was arrived at in this way without any such agreement, and it was afterward discussed, and assented to as their verdict, it would not be invalid; though this method is reproved by the court.

3. **Evidence:** EXPERTS. To render admissible the opinion of one as an expert, the pursuit in which the witness claims to be such must be one

of science, skill, trade or the like. A brakeman on a railroad is not an expert of such a character as to qualify him to give his opinions upon matters pertaining thereto.

4. —— If the consequences of actions, or combinations of circumstances, cannot be understood by those not possessing skill or peculiar knowledge thereof, opinions of experts are admissible.

5. —— On the other hand, if the facts in the evidence are of such character that conclusions therefrom may be reached by the jury without skill or peculiar knowledge, then the opinions of experts are not admissible.

6. **Railroad**: INJURIES TO EMPLOYEES: NEGLIGENCE. In an action against a railroad company for injuries to plaintiff received in coupling a car loaded with timber projecting over the end thereof, the defendant asked the court to instruct the jury, that "if the car which hurt plaintiff was loaded as loads of timber had been usually and commonly loaded and carried over defendants' and other railroads, then it was not negligence in defendant to carry the timber upon which plaintiff was hurt." *Held,* that the instruction was properly refused, on the ground that if the manner of carriage was negligent, the habit of defendant or other roads in that respect, would not relieve defendant from liability.

7. —— The following instruction was also asked: "If it was the usual and common custom of defendants' railroad to carry projecting timbers on cars, the same as when plaintiff was hurt, then it was plaintiff's duty to watch and look for such projecting timbers and avoid them; and if he did not when he could or should have done so he is not entitled to recover." *Held,* that the instruction was properly refused, on the ground that it required of plaintiff the exercise of more than ordinary care and foresight.

8. —— The following instruction was given: "It is the law of Iowa that every railroad company is liable for all damages sustained by any person, including employees, in consequence of any neglect of the agents or by any mismanagement of the engineers or other employees of the corporation, provided the plaintiff did not contribute to the injury by his own want of proper care or negligence." It was urged by the defendant that the use of the terms "*any neglect*" and "*any mismanagement*," implied that defendant was liable for want of extraordinary care; but the court held otherwise, and that the instruction was not erroneous.

9. —— The court instructed the jury that "where there has been mutual negligence," etc., the plaintiff cannot recover. It was urged by the defendant that the word "mutual" as thus used was erroneous in that it referred to the degree of negligence. *Held* otherwise, and that it simply expressed the idea of reciprocal or contributory negligence.

10. —— SPECIAL FINDINGS. The defendant requested the court to submit the following question for special finding thereon, to the jury: "Could the plaintiff have avoided the accident, for which he sues, by the use of

such ordinary care and prudence as is usually required of brakemen on railroads." *Held*, that the question was properly refused for the reasons

1. That it presented a hypothetical case, and required the jury to find the possible effects or consequences of the case supposed.

2. It did not require the jury to find from the evidence an ultimate fact in issue. COLE, J., dissenting.

*Appeal from Lee District Court.*

FRIDAY, JANUARY 25.

ACTION to recover for personal injuries sustained by plaintiff while in the employment of defendant as a brakeman, resulting from the alleged negligence of defendant's servants. There was a verdict and judgment for plaintiff. Defendant appeals. The facts involved in the points ruled by the court appear in the opinion.

*McCrary, Miller & McCrary* and *John Fyffe* for the appellant.

*Gilmore & Anderson* for the appellee.

BECK, Ch. J. — The plaintiff, while in the employment of defendant as a brakeman, was required, in the discharge of his proper duty, to couple the engine of the train he was engaged in operating to a car laden with timber. The car was an ordinary open one, commonly used in transporting such burdens. The timbers were so placed upon the car that three or four of them projected over the end to which the engine was coupled. They were four or five by eight or ten inches, and of such length when upon the car singly that they did not project over the end; those that did project were placed end to end with others, or were double length, and were upon the car in such a manner that the projection was at the side of not over, the "dead wood," and the point at which the draw bar is attached. The car was upon a side track, having been left

there for the purpose of being attached to the train upon which plaintiff was employed. Upon the arrival of the train in the night, the engine was sent for the car, and approached it by "backing." Plaintiff walked upon the side track in advance of the engine, bearing in his hand a lantern. He testifies that he had no information or knowledge of the manner in which the car was loaded and of the projection of the timbers. He is not contradicted upon this point. He also states that he did not observe the projecting timbers, and that with the light given by his lantern, and on account of the direction of his approach, he was not able to discover them. In attempting to make the coupling he was caught between the timbers and the tender and injured.

The plaintiff claims that the accident resulted and the injuries were caused by the negligence of defendant's agents and employees in loading the car in the manner described, and in attempting to transport it in a train in that condition, while defendant insists that they were produced by plaintiff's negligence or that his want of care contributed thereto. These were the main issues in the case upon which it was tried.

The questions presented to us upon the record will be considered in the order we find them discussed in the printed argument of defendant's counsel.

I. It is first insisted that the verdict is in conflict with the evidence. This point is discussed at great length, and, it is claimed, that the proof establishes want of care on the part of plaintiff which contributed to the injury, and fails to show negligence of defendant's servants. After a very careful consideration of the evidence, we are brought to the conclusion that while there may be doubts as to the correctness of the verdict, there is, by no means, such absence of evidence to support it as will warrant the presumption that it was not given in the honest, intelligent and impartial exercise of judgment on the part of the jury upon the conflicting and uncertain testimony before them. This fairly appearing from the record, we are not permitted to disturb the verdict. A discussion of the evidence in support of this conclusion is not

demanded by our practice in treating this frequently recurring question, the sufficiency of the evidence, which is raised in so many of the cases passed upon by us.

II. The verdict was assailed by a motion in arrest of judgment based on the ground shown by the affidavits of two jurors that the amount thereof was arrived at by an agreement entered into by the jury among themselves, to determine the sum to be awarded plaintiff by the addition of figures to be made by each juror and dividing the result by twelve. This court has more than once held that an agreement in advance to determine the amount of a verdict in this way, which binds the jurors to assent to the amount so found and return it as the amount of their finding, will defeat their verdict. *Barton* v. *Holmes*, 16 Iowa, 252; *Wright* v. *The Ill. & Miss. Telegraph Co.*, 20 id. 196. The affidavit of the two jurors referred to hardly brings the case within this rule. They fail to state explicitly that the agreement required the jurors to be bound by the result of the average to be ascertained and to return the same as their verdict. On the other hand, five jurors, in direct and plain language, deny that such was the purport and effect of the agreement. They explicitly state the average was ascertained at the suggestion of one of their number, and that a proposition was made in advance, but not agreed upon, that the amount should be their verdict. No such agreement was made nor in any wise assented to, but it was expressly understood that the amount when ascertained should stand open for argument and agreement by all of the jurors. When the amount was announced it was discussed and assented to on the ground that it harmonized the conflicting views of all the jurors. This showing directly contradicts the inference drawn from the affidavit of the other jurors, and must prevail against it. We think the rule of law above stated was not violated by the jury, and that the court properly overruled defendant's motion. While we thus sustain the verdict, we must not be understood to approve the method adopted by the jury, to arrive at an agreement as to the amount of their verdict.

*1. JURY AND VERDICT: quotient verdict.*

Though the plan pursued by them is not in violation of law, it trenches closely thereon, and if followed would soon by imperceptible degrees lead to the very method condemned by our decisions. It is barely on the safe side. Jurors ought to avoid such dangerous proximity to the violation of law.

III. We have before stated that defendant, at the trial, claimed plaintiff's want of care contributed to the injury. To establish this defense it was shown that he did not couple the car in the usual manner that they are coupled, when timbers project as they did when the accident happened. Upon this branch of the case a witness, who was a railroad agent, and had been two years a brakeman, was asked this question: "What is the proper way to couple cars when timber projects?" The court sustained an objection to the question, and refused to permit the witness to answer it. It is claimed that the witness was skilled in the particular matter in question, and should have been allowed to give his opinion in response to the question. The ruling of the court excluding the evidence is made the ground of an objection by defendant. We think the ruling correct. It does not appear to us that the opinion called for pertained to a matter of skill, science, trade, or the like, upon which experts are permitted to give opinions. The thing required of plaintiff was care; that it was not exercised was the very point which defendants attempted to establish. Certainly an opinion of the witness in regard to the caution exercised by plaintiff was not admissible.

3. EVIDENCE: experts.

The limits of the evidence of experts is not very clearly defined, but we have no knowledge that in any case it has been extended to admit the opinions of persons engaged in pursuits not requiring special skill attained by practice, or peculiar attainments acquired by observation or from books. Every employment requires a degree of skill, and there is none in which a degree of proficiency may not be obtained by practice. This fact is no ground for the admission in evidence of the opinions of men engaged in every pursuit in regard to matters pertaining thereto. The pursuit in which the wit-

ness claims to be an expert must be one of science, skill, trade or the like; these things pertain to the pursuit, and opinions of those proficient therein may be heard. But one skillful in pursuits not of this character may not give an opinion. The pursuit itself must be considered in determining who may be examined as experts, and we do not think that the occupation of brakemen is of such a character as to authorize them to express opinions upon matters pertaining thereto. The fact upon which opinions may be expressed must be of such character that it cannot be inferred, from other facts proved, by one not skilled, or not possessing peculiar knowledge upon the subject in controversy. When the consequences of actions or of combinations of circumstances may only be known by those familiar with the subject and cannot be understood by those not possessing skill or peculiar knowledge thereof, opinions of experts are competent evidence. If the jury are able to draw conclusions as to results from the facts in evidence, if they be of such character that conclusions may be reached without skill or peculiar knowledge, the opinion of experts are not generally admissible. We are of the opinion that the subject upon which the evidence of the witness in question was sought to be introduced is not of this character.

It was quite proper for defendant to show the usual manner of making couplings when cars are loaded, as the one in question, and evidence on this point was freely admitted at the trial.

IV. The defendant's counsel requested the court to instruct the jury that, if " the car of timber which hurt plaintiff was loaded as loads of timber had been usually and commonly loaded and carried over defendants' and all other railroads, then it was not negligence in defendant to carry the timber upon which plaintiff was hurt." This instruction was refused. The issue was that defendant was negligent in carrying the timber projecting over the end of the car — not in the simple act of carrying it. The wording of the instruction is faulty in not meeting that question.

6. RAILROAD: injuries to employees: negligence.

The instruction was properly refused for the obvious reason that habits of negligence on the part of defendant or other railroads, will not relieve them from the consequence of their negligent acts. It can hardly be insisted that, if one is " usually and commonly " negligent, he will escape liability for his acts, and that the usual and common delinquencies of others will have the effect to excuse him. If, because an act is usual and common, it ceases to be negligent, it follows that the sure way of escaping liability for injuries to persons and property, in cases of this character, would be to adopt a certain and uniform system of common negligence.

V. The following instruction was asked by defendant, and refused by the court: " If it was the usual and common custom of defendant's railroad to carry projecting timbers on cars, the same as when plaintiff was hurt, then it was plaintiff's duty to watch and look for such projecting timbers and avoid them; and if he did not avoid them when he could or should have done so, he is not entitled to recover." Defendant's negligence in carrying the timber in the manner indicated would not render it liable if plaintiff contributed by his own want of care to the injury. It was plaintiff's duty to be vigilant and watchful to the extent of ordinary care. But he was not required to " watch and look for " dangers, resulting from the defendant's negligence, which could not have been known to him by the exercise of ordinary care. Such a requirement would demand not only more than the highest degree of caution, but more than ordinary human knowledge and foresight. He could not guard against dangers unknown to him, or anticipate those beyond the view of common men. The law does not require impossible or unreasonable things. The instruction is, therefore, objectionable, because the rule it announces is not limited by the condition of plaintiff's knowledge of the custom or practice in question, or that such knowledge could have been acquired by the exercise of ordinary care. *Greenleaf* v. *Ill. Cen. R. Co.*, 29 Iowa, 14 (46).

VI. The following instruction was given to the jury: "It is

the law of Iowa that every railroad company shall be liable for all damages sustained by any person, including employees, in consequence of any neglect of the agents or by any mismanagement of the engineers or other employees of the corporation to any person sustaining such damage, provided the plaintiff does not contribute to the injury complained of by his own want of proper care or by his own negligence." The instruction is objected to on this ground : The use of the terms *any neglect, any mismanagement*, implies that the defendant is liable for want of extraordinary care, and not for the want of ordinary only, as ruled by this court in *Hunt* v. *The Chicago & N. W. R. Co.*, 26 Iowa, 364. It is argued that the terms include negligence and mismanagement of all degrees and character. But this is a mistaken interpretation of the language. The word *any*, the use of which is the ground of objection, is an indefinite pronominal adjective, and is used to designate objects in a general way without pointing out any one in particular. It indicates an indefinite number. It is not used to describe the qualities or character of objects. The language of the instruction, therefore, cannot be understood to lay down the rule that defendant is liable for want of the highest care. In another instruction the proper rule was given the jury, and they were told that defendant was only liable for want of ordinary care. The instruction complained of, it may be remarked, in the parts objected to, is a copy of section 7, chap. 169, Acts 9th Gen. Ass.

VII. In the twelfth instruction given by the court the jury are informed that " where there has been mutual negligence, and the negligence of each party was the proximate cause of the injury, no action whatever can be sustained by the party receiving injuries under such circumstances." It is insisted that the adjective mutual here used describes the character of the negligence, whether it be the want of ordinary or extraordinary care. The word means "reciprocal," done by each other, and expresses the idea of negligence on the part of both parties, and by no means indicates the character or degree of the negligence of either or both. The language of the in-

struction is copied from the opinion of this court in *Haley* v. *The C. & N. W. R. Co.*, 21 Iowa, 15 (25), and is used with propriety in the instruction.

Other questions raised upon the instructions are fully answered in the foregoing discussion; they demand no further attention.

VIII. The defendant asked the court to submit to the jury the following questions upon which they should report, in 10. —— special response thereto, special findings of fact: 1. findings. "Could the plaintiff have avoided the accident, for which he sues, by the use of such ordinary care and prudence as is usually required of brakemen on railroads?"

2. "Had the timber projecting over the cars, as was the case when plaintiff was hurt, been before thus usually and commonly carried on cars of defendant?" The court refused to propound these questions to the jury.

The first one required the jury to inquire and determine whether the plaintiff, by ordinary care and prudence, could have avoided the accident; that is, whether by possibility the accident could have been avoided by ordinary care on the part of plaintiff. The question could have been answered in the affirmative, and yet the jury could have found that ordinary care was exercised, for that fact is not inconsistent with the possibility of the accident under the same circumstances. The plaintiff was bound to exercise ordinary caution; his rights are not affected by the possibility of such a course, relieving him from the effects of the accident or preventing its occurrence. The jury could enter into no speculation as to the effect of the care required or the consequence of its exercise. If it was exercised, defendant was liable, whether the accident could or could not have been avoided thereby. The question as to the effect or possible consequence of care, caution and skill of plaintiff was before neither court or jury. The fact whether they were exercised was in issue, and nothing more touching the subject. The question presents a hypothetical case — namely, the exercise of ordinary care — and requires the jury to find the possible consequences. It was rightly

refused. It did not require the jury to find from the evidence an ultimate fact in issue in the case.

The second question was also properly refused. Had the answer been affirmative it would not have availed defendant, for, as we have above declared, the fact sought to be elicited by the question was not properly a matter of defense to the action, and was not, therefore, involved in the issues of the case.

We have considered all the objections made to the judgment of the court below, and find no error in the record.

Affirmed.

COLE, J., dissenting. — I dissent from the last point ruled, because I think the plain and ordinary meaning of the first question as asked to be submitted to the jury required them to find the single and ultimate fact whether the plaintiff exercised ordinary care and prudence under the circumstances. So a "common understanding," if involved, just that inquiry and no more, and it ought therefore to have been submitted. So the second question, to "a common understanding," was an inquiry whether the defendant usually and commonly carried timber loaded in the same way. Such is the fair and plain meaning of the language used, and the jury would have so understood it.

I agree with the other rulings wherein the opinion adopts the plain and ordinary meaning of the language used, and very satisfactorily answers the hypercriticism of it by counsel, and refutes the perverted meaning sought to be attributed to it. But when the opinion comes to these questions it changes front, and itself becomes hypercritical and perverting. It is, therefore, not consistent with itself, nor fair to court or counsel; nor, as I think, is it true to justice or obedient to the law.