TERRITORY OF MONTANA, RESPONDENT, *v.* JOHN A. ROWAND, APPELLANT.

CRIMINAL LAW — *Murder — Indictment — Specific intent.* — An indictment for murder charged a specific intent to kill the deceased, but the evidence on the trial established the fact that the prisoner had intended to kill another person. The jury found the prisoner guilty of murder in the second degree. *Held,* that a specific intent to take life is an essential element only of murder in the first degree; and that even if alleged in a murder indictment, it need not be proved in order that a conviction of murder in the second degree may be sustained, where the killing is charged to have been done unlawfully and with malice aforethought. (*Territory* v. *Rowand, ante,* p. 110, affirmed.) BACH, J., delivered a dissenting opinion.

*Appeal from the Second Judicial District, Silver Bow County.*

STATEMENT.

This case was decided at the July term, 1888. (*Territory* v. *Rowand, ante,* p. 110.) The present opinion was upon a rehearing of the appeal for which leave had been granted. The facts and instruction No. 8 (referred to by the court) appear in the former decision. Instruction No. 7, also referred to in the present opinion, was as follows: —

" If you believe from the evidence, beyond a reasonable doubt, that the defendant, John A. Rowand, at the time when and the place where, he is charged in the indictment to have killed Joseph Bussiere, laid in wait for the purpose of killing Peter Martin, who has been mentioned in the evidence, and at said place and time wilfully, deliberately, premeditately, and feloniously, and of his malice aforethought, attempted to kill said Peter Martin, and in such attempt killed the deceased, Joseph Bussiere, and if in said attempt he had killed said Martin, and such killing would have embraced all the elements of murder in the first degree, then the killing of said Bussiere is equally murder in the first degree, and you should so find by your verdict."

*E. W. Toole,* for Appellant.

Any misdirection of the court, upon a matter of law material to the issue, is ground for a new trial. This is the general rule, and is expressly made so by section 354, subdivision 5, page 468, Compiled Statutes. (Wharton's Criminal Pleading and

Practice, 739; *People* v. *Cogdell,* 1 Hill, 95; 37 Am. Dec. 297; *People* v. *Thomas,* 3 Hill, 169; *People* v. *Townsend,* 3 Hill, 479; *People* v. *Bodine,* 1 Denio, 282; *Commonw.* v. *Parr,* 5 Watts & S. 345.) And a new trial in such case will be granted, even though the jury might properly have found a verdict against defendant, upon the ground that the presumption of intent to kill the deceased was so strong in their minds that the same was not overcome by the evidence in rebuttal. (*State* v. *McCluer,* 5 Nev. 132; *People* v. *Bodine,* 1 Denio, 280; *Harris* v. *State,* 47 Miss. 318; *Ballew* v. *State,* 36 Tex. 98.) The jurymen are the sole judges of the facts and conclusions deducible therefrom, whether the same be derived from direct or circumstantial evidence. (Comp. Stats. 456, § 276; 1 Wharton's Crim. Law, 125; 1 Bishop's Crim. Procedure, 989; *People* v. *Walden,* 51 Cal. 588; *Stone* v. *Geyser Q. M. Co.* 52 Cal. 318.) An error in giving an instruction cannot be cured even by giving another directly contrary to it. (Wharton's Criminal Pleading and Practice, 703–708; *Clem* v. *State,* 31 Ind. 484; *Howard* v. *State,* 50 Ind. 190.) If this is a case of total failure of proof as to a material fact alleged in the indictment, and essential to the offense charged, no judgment can be sustained. (*Gregory* v. *Haworth,* 25 Cal. 653; *Mondran* v. *Goux,* 51 Cal. 151; *Hopkins* v. *Orcutt,* 51 Cal. 538; *Capuro* v. *Builders' Ins. Co.* 39 Cal. 124; *Anderson* v. *Taylor,* 56 Cal. 131; *Lake* v. *Tebbitts,* 56 Cal. 483.)

*W. E. Cullen,* Attorney-General, for Respondent.

McCONNELL, C. J.— We affirmed this case at the last term. (See *ante,* p. 110.) A motion for rehearing was entered by appellant, and continued to the present term, when it was granted, and the case re-argued at great length.

. The point most insisted upon by the eminent counsel who represents the prisoner, is that there was a variance between the proof and the allegations of the indi tment as to the deadly intent; that upon this point there was a total failure of proof to sustain the averment of the indictment, and that instructions 7 and 8 were erroneous and misleading to the jury; that in this case there is a want of concurrence of act and intent; that if the prisoner had shot at deceased intending to kill him, believing him to be another person, the case would be different, because he did

that which he intended to do; if he intended to kill any one in general, upon the killing being done the intent is at once imported into the act, and the necessary concurrence results; if the allegation was to kill some one to the jurors unknown, by legal fiction and to avoid a failure of justice, the intent to kill would satisfy the law in such cases; but that in this case the Territory has assumed to describe the offense in the indictment with particularity with respect to one of its essential ingredients, and it must prove it as charged.

1. It is conceded by the counsel of the prisoner that, "generally speaking, it would be proper to object to the evidence showing a fatal variance, or move to strike it out;" but he denies the application of this doctrine, when such a course would leave the presumption of guilt standing against the prisoner, arising from the fact of killing, as every person is presumed to intend the natural results of his acts; that it was for the jury to say from the evidence whether it overcame the presumption of intent which arises from the killing with a deadly weapon. These positions concede the competency of the evidence introduced on the subject of the intent. In the former hearing we predicated our opinion upon the ground that there was a variance between the proof and the allegation of the indictment upon the point of the deadly intent, and we held that the prisoner waived it by not objecting to it at the time it was offered or moving to strike it out before verdict. (1 Bishop's Criminal Law, 4th ed. § 843; *Bishop* v. *State*, 9 Ga. 121.) Now it is insisted for the first time that when the Territory proved the killing the presumption of the intent to do it would arise, and to rebut this presumption, the prisoner had the right to show that he intended to kill Martin and thus disprove one of the material averments of the indictment, to wit, " that he intended to kill the deceased"; and while the Territory introduced this evidence in chief, it was not for the prisoner to object when it inured to his benefit. If this position be correct, and we are not prepared to say it is not, the only purpose for which such evidence was competent was to rebut this presumption, and thus show that the prisoner could not be convicted of murder in the first degree. If, then, the evidence was properly admitted, was there anything in the instructions given of which the prisoner could complain? It is further conceded

by the counsel for the prisoner, that if the indictment had simply been a common-law indictment, and had not undertaken to allege the specific intent to kill any one, or had alleged the intent to kill Martin, and by accident deceased was killed, there would have been no variance, and no error in said instructions. But because the indictment did aver a specific intent to kill the deceased, and the proof negatives that allegation, the whole prosecution must fall to the ground, a new trial be granted, and the case remanded to the lower court, with instructions to the county attorney to enter a *nolle prosequi*, and re-indict the prisoner at common law, or charge the facts as they appear in proof.

The charge of murder embraces four grades of criminal homicide, which differ from each other as a whole differs from a part of the same thing; while they have some elements in common, each has its essential ingredients; and the specific intent to take life accompanying the act of killing is an essential element of murder in the first degree only. It is not necessary to constitute murder in the second degree, although it may be alleged in the indictment, and it need not be proven in order to sustain a verdict of murder in the second degree. That the killing was done unlawfully and with malice aforethought is all that is necessary to make murder in the second degree. If a fatal shot is fired or a fatal blow is struck unlawfully and with malice aforethought, which, contrary to the slayer's intention, produces death, it is murder in the second degree. The question of the deadly intent need not enter into the killing at all. The verdict in this case, which was for murder in the second degree, negatives the idea that there was a concurrence of intent to kill the deceased with the act of killing. There was an acquittal of murder in the first degree. Does it follow, then, that the failure of proof to show any specific intent to kill the deceased must result in an acquittal of the inferior grade of murder in the second degree, embraced in the crime charged? Suppose that there had been two counts in the indictment, one charging murder in the first degree, and alleging a specific intent to kill the deceased, and the other charging murder in the second degree, and saying nothing about any specific intent to kill, and there was a verdict of guilty on the second count; will any one contend that this verdict could

not stand because the proof showed that there was a total failure to prove the specific intent, as laid in the first count? Wherein does the case supposed differ in principle from the case at bar? Does not an indictment for murder in the first degree as distinctly charge murder in the second degree as if it was set out in a special count? Subtract the deliberate premeditated intent to kill from the charge of murder in the first degree, and you have left the unlawful killing with malice aforethought, which is murder in the second degree. The substance of instructions 7 and 8 is that if the jury should find beyond a reasonable doubt that the prisoner shot at Peter Martin wilfully, deliberately, premeditately, and of his malice aforethought, to kill him, but in this attempt killed the deceased, he would be guilty of murder in the first degree. The verdict itself of murder in the second degree negatives the idea that the jury found the prisoner guilty under these instructions. If the verdict had been for murder in the first degree, then the position of the counsel of the prisoner would be correct, for in that event it would have been against the allegation of intent to kill the deceased. The allegation of intent to kill deceased should be proven as laid only, because it is descriptive of the offense, and it is only a necessary description of murder in the first degree, and the jury having acquitted of that offense, it seems to us that they have eliminated the whole question of variance from the case.

The argument of counsel, and that of the learned justice, who delivered the dissenting opinion, are based upon the idea that the offense charged is single, and the failure to prove any essential ingredient in it must result in an acquittal. This was the case in the case of *Barcus* v. *State*, reported in 49 Miss. 19, so much relied on by counsel for prisoner. In that case the indictment charged an assault with intent to kill A, and the proof showed an assault with intent to kill B, a totally different offense. There was no assault on A, no wrong done him at all; one thing was charged, and another thing was proven. Of course the variance was fatal. But in the case at bar, the indictment, in legal effect, charged that the prisoner unlawfully, and with his malice aforethought, killed the deceased, and the jury, by their verdict, found these charges to be true. And can the correctness of their findings be gainsaid in the light of the proof? "The

thing done having proceeded from a corrupt mind, it is to be viewed the same, whether the corruption was of one particular form or another. Every act producing an intended result must; when evil, be measured either by the intent or by the result. The common law measures it substantially by the latter, holding the person guilty of the thing done, when there is any kind of legal wrong in the intent, the same as though specifically intended." (Bishop on Criminal Law, 4th ed. § 411.) Hence, in finding the prisoner guilty of murder in the second degree, it is enough to sustain the verdict of the jury that there was evil in the intent that brought about the killing, and in such case it is not necessary that there should be a concurrence of intent and act in the sense that the intent was to do the act complained of. "When there is any kind of legal wrong in the intent," the law will hold the guilty person responsible for his act "the same as though specifically intended." And this is all that is required by section 1 of the Criminal Laws of the Territory, which declares that "in every crime or public offense there must be a union or joint operation of act and intention, or of act and criminal negligence." The wrongful intent and act must operate jointly to produce the crime complained of. In this view of the case, what difference can it make whether the prisoner intended to kill the deceased or Peter Martin, so far as murder in the second degree is concerned? It could make no difference so far as murder in the first degree is concerned, but for the allegation in the indictment that the intention was to kill the deceased. This averment need not have been in the indictment, and is only bound to be proven, so far as the grade of the offense is concerned, of which it is descriptive, and of which it is an essential ingredient. But the attempt to kill Peter Martin deliberately, wilfully, premeditately, and with malice aforethought, shows an intent which is evil, and the result of that intent was the killing of the deceased, and the law holds the prisoner responsible for this result in the same manner as if he intended it.

2. In instruction 11, the court below said to the jury: "If you do not find the defendant guilty of murder in the first degree, but still find from the evidence beyond a reasonable doubt that he killed Joseph Bussiere unlawfully and with malice

aforethought, either express or implied, you will find him guilty of murder in the second degree." Here is a full and accurate instruction to guide the jury in their deliberations on the subject of murder in the second degree. This instruction they must have followed.

We do not deem it proper to follow counsel in his argument on the other instructions, as it does not come within the scope of the ground upon which the motion for a rehearing is predicated. Suffice it to say, that the answer to all his objections to the instructions given in behalf of the Territory, if there is anything at all in them, is found in the thirty-one exhaustive instructions given at the request of the prisoner's counsel.

Taking this interesting case altogether, we think that substantial justice has been done, and that is all that can reasonably be expected of human tribunals. Let the case be affirmed.

*Judgment affirmed.*

LIDDELL, J., concurs.

BACH, J. (*dissenting*).—I cannot concur with the majority of the court in this case.

Upon the previous hearing all the judges concurred in the opinion that certain allegations contained in the indictment were matters of material description; I shall therefore accept that proposition as granted. At that time, however, the majority of the court concluded that the defendant had waived his rights by failing to object; in dissenting I expressed the opinion that the case did not present a question of variance, but a question of entire failure of proof. I cannot see that anything is to be gained by the statement that murder in the second degree could have been properly alleged in a second count. That seems to beg the question. The fact remains that it was not so charged in this case. There are many crimes which may be committed in one of several ways; and an indictment may charge, by the use of several counts, that the crime was committed in each of those ways. In such a case the indictment will sustain a verdict found upon the appropriate count. But suppose that an indictment charged that the offense was committed in only one of the ways mentioned in the statute, and that the proof demonstrated that in fact the crime was committed in another way, would the

evidence sustain the verdict? What possible difference does it
make when we admit that the pleader might have charged the
crime by further count, provided the fact remains that he did
not so charge it? Our statute declares that the facts must be
charged; and it follows that the facts charged must be proved
as charged in all material particulars.

In the present opinion of the majority of the court, the case
of *Bishop* v. *State*, 9 Ga. 121, is cited to sustain the position
that the defendant has waived his right by failing to object. I
think that the majority of the court has misapprehended the
point decided in that case, which was this:—

Richard Bassett had testified as to certain localities. Upon
rebuttal, the prosecution introduced in evidence a map for the
purpose of contradicting Bassett, which map was admitted with-
out objection. Upon appeal, defendant urged that it was error
to admit the map before it had been shown to Bassett. The
court properly held that it was too late to raise such an objection.
That was not a case of failure of proof, or a case of proving a
crime differing from the one alleged. The evidence was mate-
rial to the issue — tended to prove the issue. It is similar in
principle to the introduction of secondary evidence without first
laying the proper basis. In such case, if the evidence is intro-
duced without objection, it cannot be claimed that it was errone-
ously admitted.

The reference to Bishop on Criminal Law is to the same
effect. Only one case has been referred to in the opinion or
arguments which is directly in point. Counsel for appellant
refers to no other case which is exactly similar to this; counsel
for respondent has cited none, and I have searched in vain for
any other. The case to which I refer is *Barcus* v. *State*, 49
Miss. 17; 19 Am. Rep. 1; and it seems to me that it is an
authority corresponding in all respects with the case at bar.
The defendant, Barcus, was indicted for shooting with intent
to kill and murder Sandy Mitchell. The proof showed that
he shot at Henry Creighton with intent to kill him. Defend-
ant was found guilty, and appealed. The judgment was re-
versed, for the reason that there was an absolute failure to
prove the crime charged; and the cause was remanded, with a
recommendation to the district attorney to quash the indictment,

and instructions to detain the defendant, subject to the action of the next Circuit Court. Such, in my opinion, should be the judgment in this case.