## SEESE *v.* NORTHERN PAC. R. CO.

*(Circuit Court, D. Minnesota. July 16, 1889.)*

**1. MASTER AND SERVANT—INJURY TO EMPLOYE—RISKS OF EMPLOYMENT.**

Where in a suit by a brakeman to recover damages from a railroad company by which he was employed, for an injury received by an alleged defective draw-head on a car, the law as to the obligations of defendant, and the acceptance of risks and the degree of care required of plaintiff, is clearly set forth in the charge, the verdict of the jury will not be set aside on the ground that no negligence on the part of defendant was shown, where there was evidence that the draw-head was sunk four inches, and that the defect was old and plaintiff did not know of it.

**2. EVIDENCE—EXPERT TESTIMONY.**

In such case expert testimony of a yard-master that the method of coupling adopted by plaintiff was careless, dangerous, and not the usual or best way of coupling, was properly excluded.

**3. MASTER AND SERVANT—NEGLIGENCE OF SERVANT.**

The defendant introduced in evidence certain rules adopted by it in relation to the coupling of cars. prohibiting the use of the hands for such purpose, and ordering the use of a stick or pin. The superintendent of defendant testified that such rules were in use when plaintiff was injured, but could not testify that they had been sent to the "heads of the management of the yards" where the accident happened. Plaintiff testified that no such rules were enforced in the yards while he was there, and he knew nothing about them. *Held,* that it was for the jury to decide whether plaintiff was bound by such rules, and that they were known to him and violated by him.

At Law. Motion for new trial.

*F. D. Larabee* and *J. C. Bullit, Jr.,* for the motion.

*E. F. Lane, contra.*

NELSON, J. The action is to recover damages for a personal injury. The plaintiff was employed as a brakeman in the defendant's yard at Minneapolis, in this district, and while in the act of coupling cars sustained an injury to his hand, caused by the alleged defective condition of the draft timber which holds up the draw-head on one of the cars. There was evidence tending to show that the bolts that go into the dead-wood were sunk down into the timber and let the draw-head down four inches or more lower than it should be. There was also evidence tending to

show the defect was old and not recent, and that the brakeman did not know of it. The plaintiff was ordered by the foreman in charge of the. gang of yardmen to which he belonged to couple a car to the defective one. There was sufficient evidence of defendant's negligence to be submitted to the jury. The law given in the charge of the court on the trial defined clearly the obligation of the defendant, and the acceptance of risks and degree of care to be exercised by the plaintiff. The jury found for the plaintiff, and the verdict cannot be disturbed, for the reason urged by counsel that no negligence of the defendant which caused the injury is proved. *King* v. *Railroad Co.*, 14 Fed. Rep. 281.

It is urged, however, that it was error for the court to exclude expert testimony in regard to the manner in which the evidence showed the plaintiff attempted to make the coupling. A yard-master, who had been in the service of switching and coupling cars for 19 years, was called as an expert, and the defendant's counsel offered "to prove by the witness that the method of making a coupling of freight-cars with link and pin, as were used on this occasion, when the plaintiff was injured, at the time of day or night when this coupling was attempted to be made by him, was extremely dangerous and careless and injudicious, and not the usual or ordinary way or the best way of making a coupling under the circumstances." Also, "to prove that the manner in which he (plaintiff) undertook to make it at the time he received his injury was an improper way, and a very negligent and careless one, and one that a man might very naturally expect to receive an injury from; and that it was not a way in which an expert or careful and judicious person would undertake to make a coupling at that time." An objection was sustained to such evidence. I think there was no error in excluding it. Upon subjects requiring medical knowledge and skill evidence of this character is given, and the United States supreme court hold that it is not limited to that class of cases either, but is competent upon subjects on which a jury are not as well able to judge for themselves as is the witness. See *Transportation Line* v. *Hope*, 95 U. S. 298. The rule as laid down by the United States supreme court was elaborated in the supreme court of Iowa, in a car-coupling case, and is well stated, as follows:

"It does not appear to us that the opinion called for pertained to a matter of skill, science, trade, or the like, upon which experts are permitted to give opinions. The thing required of plaintiff was care. That it was not exercised, was the very point which defendants attempted to establish. * * * Every employment requires a degree of skill, and there is none in which a degree of proficiency may not be obtained by practice. This fact is no ground for the admission in evidence of the opinions of men engaged in every pursuit in regard to matters pertaining thereto. * * * The pursuit itself must be considered in determining who may be examined as experts, and we do not think that the occupation of brakemen is of such a character as to authorize them to express opinions upon matters pertaining thereto." *Hamilton* v. *Railway Co.*, 36 Iowa, 36. Also *Muldowney* v. *Railroad Co.*, Id. 472.

The cases cited by defendant's counsel (*Propst* v. *Railway Co.*, 3 South. Rep. 764, and *Railway Co.* v. *Frawley*, 9 N. E. Rep. 594) are not in conflict with the opinion announced in the Iowa cases.

Again: The following rule adopted by the defendant company was offered in evidence, and received:

"*Caution as to personal safety.* 25. Great care must be exercised by all persons when coupling cars. Inasmuch as the coupling apparatus of cars or engines cannot be uniform in style, size, or strength, and is liable to be broken, and as from various causes it is dangerous to expose between the same the hands, arms, or persons of those engaged in coupling, all employés are *enjoined,* before coupling cars or engines, to *examine* so as to *know* the kind and condition of the draw-heads, draw-bars, links, and coupling apparatus, and are prohibited from placing in the train any car with a defective coupling until they have first reported its defective condition to the yard-master or conductor. Sufficient time is allowed, and may be taken by employés in all cases, to make the examination required. *Coupling by hand is strictly prohibited. Use for guiding the link a stick or pin.* Each person having to make couplings is required to provide a proper implement for the purpose, as above specified. All persons entering into or remaining in the service of the company are warned that the business is hazardous, and that in accepting or retaining employment they must assume the ordinary risks attending it. Each employé is expected and required to look after and be responsible for his own safety, as well as to exercise the utmost caution to avoid injury to his fellows, especially in the switching of cars, and in all movements of trains. Stepping upon the front and rear of approaching engines, jumping on or off trains and engines moving at a high rate of speed, getting between cars in motion to uncouple them, and all similar imprudencies, are dangerous and in violation of duty, *and are strictly prohibited.* Employés are warned that, if they commit them, it will be at their own peril and risk. Employés of every rank and grade are required to see for themselves, before using them, that the machinery or tools which they are expected to use are in proper condition for the service required, and, if not, to put them in proper condition, or see that they are so put, before using them. *All will be held responsible accordingly.*"

The defendant then introduced as a witness the assistant superintendent, who testified that the rules were in force at the time that plaintiff received his injury, and that they were made for the information of the employés in the operating department, and that they were sent and distributed to the different heads, but could not testify that they were sent to the "heads of the management of the yards at Minneapolis." The plaintiff, in rebuttal, testified that the rule with regard to the coupling of cars in that yard with a stick or pin had never been enforced while he was there, and that he "never knew anything about the rules whatever."

It was properly submitted to the jury whether upon the evidence the plaintiff was bound by the rules, and that they were known to him and violated. Motion for new trial denied.