O. E. PETERMAN v. N. N. JONES, Sheriff, Appellant.

94  591
114  661
94  591
128  117.

**Notice to Release:** SHERIFF AND DEPUTY. Where a notice to release under Code, 3055, is read by the deputy who made the levy and he then returns the original and keeps a copy handed him which he delivers to the sheriff, there is sufficient service, and the deputy's admission in testimony that he received the notice, is sufficient proof of delivery though a written admission of service was made. *Chapin v. Pinkerton*, 58 Iowa, 236, *distinguished*.

**Practice:** EVIDENCE. A witness may be asked if he received a "notice to release the property," to call attention to the subject of inquiry, where the notice itself is introduced to prove its contents.

MISCONDUCT OF JURY. Finding of court that there was none, not disturbed upon conflicting evidence.

*Appeal from Cass District Court.*—HON. A. B. THORNELL, Judge.

MONDAY, MAY 20, 1895.

Action at law to recover specific personal property levied upon by the defendant as belonging to L. O. Peterman. Verdict and judgment for plaintiff for the major part of the property, and for defendant for the remainder. Defendant appeals.—*Affirmed.*

*T. B. Swan* for appellant.

*Willard & Willard* for appellee.

Deemer, J.—Between the fifth day of April, 1884, and the fifteenth day of August, 1891, Estey & Camp sold and delivered to one L. O. Peterman divers musical instruments, for which there was a balance due them of something over one hundred dollars. On the fourth day of April, 1893, they obtained judgment in the district court of Cass county for this balance of account. Execution issued on this judgment, which, on the sixteenth day of September, 1893, was levied upon certain personal property as belonging to L. O. Peterman, and on the twenty-first day of the same month was levied upon other property as the property of said Peterman. The property so levied upon was sold by the sheriff at execution sale, and the proceeds, after paying costs, were applied on the Estey & Camp judgment. This action was brought to recover the property so levied upon and sold, or its value in case it could not be found, and, as no bond was given, it is in the nature of an action in detinue. The plaintiff claims to be the absolute owner of all of it, by purchase from L. O. Peterman in October, 1890, February, 1893, and subsequently, and of a part of it by purchase from a stranger. He claims to have given notice to the sheriff of his claim of ownership before bringing the suit, and asks that his right to the possession and value of the property be established. The defendant denies

having received any notice of plaintiff's claim of owner-
ship before the commencement of the suit; denies that
plaintiff is the owner of the property; and alleges that
his claim thereto is fraudulent and void. That the
alleged sale of the property to plaintiff was coupled
with a secret trust for L. O. Peterman. That it is and
was without consideration, and made with intent to
hinder, delay, and defraud the creditors of L. O. Peter-
man, and particularly Estey & Camp. Defendant also
alleges that as to a part of the property the sale is
invalid, because there was no bill of sale executed
therefor, and no change was made in the possession.
The jury found that plaintiff was entitled to the pos-
session of all the property except one bay horse and one
dun mare, and fixed the value of plaintiff's property at
one hundred and eighty dollars, and the value of that
defendant was entitled to hold at fifty-nine dollars
and seventy-five cents.

I. The first point made in argument is that no
notice was given to defendant before the commencement
of the suit, of plaintiff's claim to part of the property, as
required by section 3055 of the Code. This prop-
erty is that levied upon on September 16, 1893.
The evidence shows that the levies in question
were made by one C. I. Willis, deputy sheriff of Cass
county, Iowa, and that he took the property into his
possession. That on the eighteenth of September, 1893,
the plaintiff caused a written notice of his ownership
of the property levied on September 16, 1893, to be
written out, signed, and directed to the defendant. He
duly verified this notice, and had a correct copy made
of the same. These he took to Willis, the deputy sher-
iff, and delivered them both to him. Willis read the
original, and, after reading, indorsed thereon the fol-
lowing: "Service accepted this eighteenth day of Sep-
tember, 1893." "N. N. Jones, Sheriff, by C. I. Willis,

Deputy." He then handed the original to plaintiff, and retained the copy. The copy he returned to the sheriff, who either saw or was informed of the contents thereof. Willis then repaired to the office of the attorney for the execution plaintiff, gave him the copy which had been left with him, and demanded an indemnifying bond, which bond was given in a reasonable time. It is contended on behalf of appellant that this notice is not sufficient; that it was never served upon the sheriff nor upon the deputy, in the manner required by law; and that the deputy had no authority to accept service. Section 3055, which we have referred to, provides, in substance, that if, after levy, the officer receives a notice in writing from some other person that the property belongs to him, such officer may release the property, unless an indemnifying bond be given; and it further provides that the officer shall be protected from all liability by reason of the levy until he receives such written notice. In construing this section it has been held that the service of a written notice upon the deputy who makes the levy is sufficient. *Burrows v. Waddell*, 52 Iowa, 195. And it has also been held that notice may be given the sheriff, where the property has been levied upon by a deputy. *Headington v. Langland*, 65 Iowa, 276. It will be noticed that the officer is protected until he "receives" the written notice required. The manner of service or the form of proof required is not specified. We think if the written notice referred to is delivered to the officer, and he receives it, and, without request, hands it back to the one who presents it, and retains the copy, that "he receives it," within contemplation of law; and, as we have held that the notice may be delivered to the deputy who levies upon the property, it would seem to follow that notice was properly given in this case. *Turner v. Younker*, 76 Iowa,

258. It is true we have held that it is not sufficient to simply read the notice to the officer, for it has been said to be his justification for demanding the bond and releasing the property, and he ought to have it for proof and preservation. *Gray v. Parker*, 49 Iowa, 624. But having received it, as the evidence shows he did in this case, and having voluntarily and without request returned it to plaintiff, evidently preferring the copy, we think he waived his right to insist that the original should have remained with him. It is further important to note that the notice called the "copy" left with the officer was signed by the plaintiff, and it seems to us that it was a sufficient notice, although the one called the "original" was returned to plaintiff. The deputy sheriff was placed upon the witness stand, and admitted the receipt of the notice. This was sufficient proof of the delivery of the notice, and we are not required to determine whether it could have been proved by the written acceptance of service. The case is, however, clearly distinguishable from *Chapin v. Pinkerton*, 58 Iowa, 236; for in that case the deputy had no duty to perform with reference to the property levied upon. It had been taken by, and was then in the custody of, the sheriff himself. In this case the property was levied upon, taken possession of, and at the time of the delivery of the notice was held by, the deputy, although in the name of the sheriff.

2   Defendant objected to a question propounded to the witness Willis, with reference to his having received a notice to release the property, on the ground that it was incompetent. We think the interrogatory was proper, and that it did no more than call the witness' attention to the subject-matter inquired about. The notice itself was introduced to prove its contents, and the question was asked to prove the receipt of it. The witness was also allowed to testify that Estey &

Camp furnished an indemnifying bond, which was approved by the sheriff. Complaint is made of this. As we have held, the notice was sufficient. It was probably immaterial to show what was done by the execution plaintiff, but, concede that it was error to admit the testimony, it is clearly error without prejudice.

II. It is next insisted that the verdict is contrary to the evidence, and not sustained thereby. The jury might very well have found that the dealings between plaintiff and L. O. Peterman, who is his brother, with reference to the property, were fraudulent. But if they believed these parties, as they had a right to do, they were justified in finding that the property found to belong to plaintiff was purchased by him for a valuable consideration, and in good faith, in full satisfaction of a pre-existing debt. We cannot interfere with the verdict.

III. A new trial was asked on account of misconduct of the jury. It is claimed that the verdict was arrived at by chance, and was not the deliberate judgment of the jury. Affidavits of four of the jurors were presented, tending to show that an agreement was made in advance to be bound by a verdict arrived at, by first adding together the value of the property as fixed by plaintiff's witnesses, estimated at four hundred dollars, and by defendant's witnesses at eighty dollars, then dividing the total by two, and deducting from the quotient so obtained the sum of fifty dollars, the value of three animals. The remainder was divided by eleven, the number of jurors engaged in the trial (one having been excused); the quotient thus obtained to be used by each juror as he saw fit. That, pursuant to this arrangement, seven of the jurors concluded to allow their amounts to plaintiff, and selected the property which was afterwards allotted to him in addition to the

three animals above mentioned, which were valued at fifty dollars; and three concluded to give their allowance to defendant, and selected the property afterward allotted to him; and one determined to divide his allowance between plaintiff and defendant. That this agreement was carried out and the verdict returned accordingly. From this it would seem that seven of the jurors selected the property awarded plaintiff, and three that awarded the defendant, and that the other, having no property to select from, divided his amount between the two parties. The testimony is corroborated to some extent by the result arrived at. On the other hand, four of the jurors testified that they made some such calculation as this, but they did it as an experiment, and to arrive at something like an average. They specifically say that there was no agreement in advance to be bound by the result, or that the amount ascertained should be the verdict; and they say that after the result was arrived at they talked the matter over, and agreed upon the property plaintiff was entitled to receive, and finally allotted it, and fixed the price on each animal separately, and that the amounts were not arrived at by chance. The trial court was justified in finding that there was no such agreement between the jurors as claimed by defendant, and with his finding we are not disposed to interfere. We have held that where the jurors agree in advance to be bound by the result, and make up their verdict by arriving at a quotient in some such manner as was shown in this case, such verdict will be set aside; but that if there is no such agreement, and the figuring was done simply for the purpose of ascertaining what the average amount of the verdict would amount to in case it was adopted, it is not vulnerable to the objection urged. *Barton v. Holmes,* 16 Iowa, 258. There was no error in overruling the motion.

We have discussed all the matters complained of in argument, and, finding no error, the judgment is *affirmed*.