i 100   239
f134   457

## RICHARDSON & BELL BROTHERS v. ARCHIE DOUGLAS, Appellant.

**Evidence:** SECONDARY AND BEST. A witness, even though shown to
be familiar with the printed instructions contained in the cata-
logue furnished by the manufacturers of an engine, as to its man-
agement, cannot testify as to what such instructions are, since,
even, if such instructions are competent to be received, the cata-
logue itself is the best evidence of them.

EXPERT EVIDENCE: *Machinery*. Plaintiff's grain was destroyed by
fire set by sparks from defendant's engine, operating a threshing
machine. A witness testified that he had run an engine for about
forty years; had operated the engine in question a little; that he
had run similar engines, but never for threshing grain. *Held*, that
the witness was competent to testify as to the appliances neces-
sary to keep sparks from escaping from such engine.

HARMLESS ERROR. A witness testified that, shortly after the fire, he
examined the smokestack of defendant's engine, and did not find
any appliance for arresting sparks. *Held*, that in view of testi-
mony that, between the time of the fire and the time the witness
examined it, the spark arrester had been taken off, the admission
of the testimony complained of was not prejudicial.

**Contributory Negligence.** One who employs another, having an engine·
and threshing machine, to thresh for him, is not guilty of such
contributory negligence as to bar recovery for a loss of his stacks
through a fire due to the negligence of the employes of the owner
of the engine, in not having it provided with proper spark arrest-
ers, because he, in ignorance of such fact, designated a place for
the setting up of the engine, which is actually dangerous, but
which such employes assure him is safe.

*Appeal from Monroe District Court.*—HON. ROBERT
SLOAN, Judge.

FRIDAY, DECEMBER 11, 1896.

ACTION at law, to recover the value of oats owned by the plaintiffs, alleged to have been destroyed by reason of negligence on the part of the defendant. There was a trial by jury, and a verdict and judgment for the plaintiffs. The defendant appeals.—*Affirmed.*

*T. B. Perry* and *N. E. Kendall* for appellant.

*Wm. A. Nichol* for appellees.

ROBINSON, J.—In July, 1894, the defendant was operating a steam threshing machine, and was employed by the plaintiffs to thresh for them several stacks of oats. For that purpose, the machine was set in the stack yard, and run for a short time, when work was suspended, and all the persons engaged in it left the yard to eat their noonday meal. They had proceeded but a short distance from the stacks when one of them was discovered to be on fire, and, before it could be extinguished, all the oat stacks and the separator were destroyed. The engine was saved, but, the next day, while it was being moved to another place, it fell from a bridge, and was somewhat damaged by the fall. The plaintiffs allege that the fire was caused by the negligence of the defendant in not using a screen spark arrestor; in operating the engine with an open smokestack, without any appliance to prevent the escape of sparks and fire; in failing to have a careful and competent person to operate the engine; in negligently so setting the engine that the sparks therefrom blew onto the stacks; in not removing the combustible materials from the ground under and around the engine; in making a hot fire in the engine, and not leaving any one in charge of it; and in not using any means to prevent the escape and spread of the fire. The defendant denies negligence on his part, and alleges that, if he was negligent, the

plaintiff's were guilty of contributory negligence, and directed that the engine be placed where it was finally located, and knew of the alleged negligence of the defendant.

I. The appellant complains of the admission of the testimony given by A. P. Mintonye, on the ground that he was not shown to be a competent witness. He stated that he had had experience in running an engine about forty years; that he had purchased the engine in question for his son, and operated it somewhat; that he had run similar engines twelve or fourteen years; that he had run engines for steam threshers, although he had never run one for threshing grain; that he had examined the engine in question, and had helped to overhaul and repair it, and knew its construction. He was then asked: "What appliances are necessary, in such an engine as this, to arrest the escape of sparks from the smoke-stack?" An objection to the question was overruled, and the witness described an appliance, called a "baffle plate," which is a perforated plate of iron so placed, under the smokestack, and in front of the flue of the engine, as to regulate the draught of air through the flues, and cause the sparks from the fire-box to strike it and fall into a receptacle below. He also spoke of an additional screen, but said it was not generally used, on account of clogging. He was then asked: "Suppose the "baffle plate is taken out, and there is no screen in the smokestack; what is the likelihood of sparks being thrown out, in ordinary work, from the smokestack?" An objection to the question was overruled, and the witness answered that, if the fire was in light condition, and there was nothing to prevent, the sparks would sometimes go out, and sometimes fall below. Another question, of a similar character, was asked and answered, and the witness was permitted to state the effect of the blower upon

the drafts.  We are of the opinion, that the district court was right in permitting the questions to be answered.  The fact that the witness had never operated an engine while it was running a separator, did not disqualify him to tell the facts which he knew, from long experience, in regard to sparks thrown from stationary engines, similar to that in question, and the means which might be adopted to prevent their escape.  It is not claimed that sparks escape more freely from such an engine, while it is being used to run a separator, than while it is used to run a wood saw, or do other work.  The degree of competency shown by the witness was sufficient to justify the admission of his testimony, and its value could have been tested upon cross-examination, or by other recognized means.

II.  A baffle plate belonged to the engine of the defendant, but whether it was in its proper place at the time of the fire was a disputed question.  The plaintiffs offered testimony to show that it was not, and among the witnesses who were examined in regard to its condition was Alexander Chisholm.  He saw the engine of the defendant after it had fallen from the bridge, and was permitted to state that he did not find any appliance for arresting sparks from the top of the smokestack, and did not see a baffle plate. Of that the appellant complains on the ground that the engine was not in the condition, when Chisholm saw it, that it was at the time of the fire. That is true, but the testimony for the defendant shows that he did not use the cone screen for the smokestack, and that the baffle plate was taken out after the fire, and not replaced, and that it was broken by the fall from the bridge.  Therefore the defendant could not have been prejudiced by Chisholm's testimony on that point.  Some objection is made to his

competency to testify in regard to certain other matters, but, we think, without sufficient grounds.

III.  A witness for the defendant was shown to
be familiar with the illustrated and descriptive catalogues furnished by the manufacturers of the engine
in question, and he was then asked if they did
not give certain instructions, which were
included in the question, for the management
of their engines.  An objection to the question was
properly sustained.  It referred to printed instructions, which, if competent, should have been introduced as printed.  Whether they were competent
evidence for any purpose, we do not decide.

IV.  The appellant complains most of a paragraph
of the charge of which the following is a copy:  "(18)
If you find that there was no baffle plate in the engine
while the same was being operated when ·the fire
occurred, and that, in view of the direction of the
wind, and dryness of the oats, and other circumstances
under which it was being operated on that day, it was
negligent to so operate it, and find that there was no
danger, and the fire would not have occurred, had said
engine been operated with the baffle plate, with coal
for fuel, when the wind was blowing from the engine
towards the oats stack while they were operating it,
and the plaintiffs did not know that it was being operated without a baffle plate, then the plaintiffs would.
not be guilty of contributory negligence in requesting
it to be located as it was located on that day, if
you find they did request it."  Some of the evidence tends to show that the employes of the
defendant in charge of the machine at the time
of the fire desired to set it in such a manner
that the wind would not have blown from the
smokestack of the engine towards a certain stack
of oats, and that the plaintiffs requested that
it be set as it was.  But the mere fact that the

engine was set where the plaintiffs desired it to be placed, and which proved it to be a dangerous location, does not show that the plaintiffs were negligent. Under the conditions assumed by a part of the charge in question, that a baffle plate and coal for fuel had been used, it would not have been a dangerous location. The evidence shows that the plaintiffs were careful and solicitous in regard to danger, and frequently spoke of it, and were assured by the employes of the defendant. that there was none. The place where the defendant proposed to set the engine was within ten feet or less of a stack of hay, and the plaintiffs asked to have it set ten feet farther from the stack, to lessen the danger from fire. The defendant was charged with the duty of using reasonable diligence to avoid danger. He could not avoid that responsibility by setting the engine in the place pointed out by the plaintiffs, if he knew, or had reasonable ground to believe, that the place was a dangerous one, and that the plaintiffs were ignorant of the fact, without fault on their part, and had selected it in the belief that it would lessen the danger. In that case he should have informed the plaintiffs of the fact, in order to release himself from liability. The case of *Kesee v. Railroad Co.*, 30 Iowa, 82, relied upon by the defendant, is not in point on this branch of the case. The evidence justified the conclusion that the defendant should have known that the place where the engine was set was a dangerous one, and that the plaintiffs were not only ignorant of the fact, but had reason to believe, from the statements made by employes of the defendant in charge of the engine, that it was entirely safe. As applied to the facts of the case, the portion of the charge in question was not erroneous.

V.  It is claimed that the plaintiffs are not the owners of the oats in controversy, but that they are

owned by two Bells, known as "Bell Bros.," as tenants of Richardson.   The evidence shows clearly that the oats were the property of Richardson and the two Bells, and that they were co-partners, and transacted business under the name of Richardson & Bell Bros. The evidence is ample to sustain the verdict, and we find no ground on which to disturb the judgment of the district court.   It is therefore AFFIRMED.