SARAH McGAR, *pro ami*, *vs.* NATIONAL & PROVIDENCE WORSTED MILLS.

PROVIDENCE—JANUARY 19, 1901.

PRESENT : Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *New Trial. Master and Servant. Improper Appliances.*

In an action for negligence, in that the belt which broke and struck the plaintiff was improperly laced at the place where it parted, the evidence as to whether the lacing was single or double was in conflict, but all the evidence tended to prove that single lacing is considered unsafe and insufficient :—

*Held*, that as it was competent for the jury to find upon the above state of the testimony that the belt was improperly laced, after a verdict for the plaintiff a new trial would be refused.

(2) *New Trial. Several Counts.*

Where two grounds of negligence are alleged in a declaration, either one of which, if made out, would be sufficient to sustain the verdict, and evidence has been offered *pro* and *con* upon each of said grounds, a new trial will not be granted if the court can see that one of the grounds was made out, although the other may not have been, unless it shall appear by a special finding that the verdict was based upon a ground not sustained by the evidence.

(3) *Negligence. Unsafe Appliances. Inspection.*

Where original negligence exists in the defective construction of the appliances furnished a servant by his master, it is not corrected by inspection, however frequent.

(4) *Negligence. Assumption of Risk.*

The doctrine of assumed risk has no application to a case where the servant has seen but one belt break during her employment and is ignorant of the fact that belts were breaking frequently in the room where she worked. The fact that a servant knew the manner in which a belt was laced without knowing that such manner was unsafe is not an assumption of the risk.

(5) *Evidence.*

Expert testimony as to the lacing of belts in mills of a different character from the one where plaintiff was employed is relevant.

(6) *Evidence. Requests to Charge.*

It is not error for the court to grant a request to charge which omits a statement of law pertinent to the case if the point is covered elsewhere in the charge.

(7) *Evidence. Requests to Charge.*

Requests to charge which have nothing to do with the questions at issue are rightly refused.

TRESPASS ON THE CASE for negligence.   The facts are fully stated in the opinion.   Heard on petition of defendant for a new trial.   New trial denied.

· TILLINGHAST, J.   This is trespass on the case for negligence.

The jury found for the plaintiff, and the defendant petitions for a new trial on the grounds that the verdict is against the evidence ; that the court erred in certain of its rulings ; and that the damages awarded by the jury are excessive. The last ground is not relied on.

At the time of the accident the plaintiff was in the employ of defendant corporation, and was operating a spinning-frame which was run by a power belt leading from the main shafting over the machine near the ceiling and carried down over a gallows-pulley to the end of the ˙spinning-frame opposite the main shafting.   These spinning-frames are set up in rows four or five feet apart, parallel with each other and at right angles to the main shafting.   The spaces between them are called alleys.   The operative works all along the alley in front of the frame and almost directly under the belt which operates it.   This belt is about three inches wide, one-fourth of an inch in thickness, and about seventy or eighty feet in length.   When in full operation the speed of the shaft is about two hundred and twenty-five revolutions a minute, and the tension on the belt is about fourteen hundred pounds. The belt is made of several sections, stitched or fastened together at the joints with raw-hide lacing.   The average life of a lacing, or joint, is from four to six months.   On the morning of the accident the plaintiff, a girl of seventeen years of age, was at work tending her frame, and while the machine was running at full speed the belt suddenly and without warning broke in one of its joints and struck her on the right side of her head, winding itself about her neck so that she was partly lifted off her feet and then fell over upon the floor in an unconscious condition.   Her injuries, which were very severe, caused her to be confined to her bed for over four months and finally developed into a severe case of major

hysteria, from which she has not recovered and may never recover.

The plaintiff alleges and claims to have shown negligence on the part of the defendant in two particulars, namely, (1) in that the belt which broke and struck the plaintiff was improperly stitched or laced at the place where it parted, and (2) in that the defendant failed to properly inspect the joints of said belts from time to time in order to discover the natural wear and weakness of the lacings.

The testimony as to the manner in which the particular belt in question was laced or stitched before the accident is conflicting.   The plaintiff testifies that about a month before the accident the section-hand, Smith, relaced all of the joints in the belt, she assisting him, at his request, by holding the belt ; and that the manner in which he repaired or fixed it was by punching four holes in a row in each end of the belt where it was to be joined, and then lacing the ends together by single lacing ; that is, as we understand her, by putting one strand of lacing only through the holes.   The witness Higgenbottom, who was employed in the same room with the plaintiff as assistant to the second-hand, testifies that he saw the belt just after the accident and helped Smith, the second-hand, to fix it when it was relaced by him ; that the lacings broke in the joint where the belt parted, and that they were worn pretty bad.   He also testifies that the lacing which broke was single lacing, with only one row of holes on each side of the joint before it broke.   In cross-examination he further testifies that when repairing the broken joint the second-hand punched a new row of holes upon each side of the joint, that the holes in the old part were not disturbed, and that he punched new holes because the belt was not laced right in the first place ; that there was only one row of holes in each end of the belt, and that it was the custom to stitch all the joints in the belts there with a single strand of lacing through the holes.

(1)   On the part of the defendant testimony was introduced to the effect that two rows of holes were punched in each end of said belt at the places where it was joined, and that double

lacing instead of single was used in making the fastenings. Smith, the second-hand, testifies that it was so laced by him before the accident, and that he did not punch new holes in it after the accident ; that it was the lacing that broke.

The testimony of experts in belt-making was introduced both on the part of the plaintiff and of the defendant, and they all practically agree that the double-lacing method is generally adopted by skilled belt-makers and repairers, and that it lasts three or four times longer than the single-lacing method. One of the defendant's experts says that he does not know of any well-regulated mill that would use the single lacing referred to, and that in his opinion a joint laced with a single row of holes on each side and with a single strand of lacing would not be safe. In short, it is apparent, from an examination of all the evidence bearing upon the question of the character and sufficiency of the kind of stitching or lacing first described—that is, the single strand placed in a single row of holes on each end of the joint—that it is considered insufficient and unsafe.

As it was competent for the jury to find, under the foregoing state of the testimony, that the belt in question was improperly and insecurely laced, the court cannot say that they were not warranted in finding the defendant guilty of negligence. Its duty clearly was to provide the plaintiff, in common with its other employees, a reasonably safe place in which to work and reasonably safe appliances and instrumentalities for the performance of the work. And for negligence in the discharge of this duty the defendant is liable under the well-settled law of master and servant. *Mulvey* v. *Locomotive Works*, 14 R. I. 204. We agree with the position taken by defendant that the employer does not undertake with the employee that he will adopt the latest and best appliances, or that he is to be cast in damages for error of judgment in selecting one kind of machinery or appliance on proof that another kind is better or safer, when both kinds are in common use. This doctrine is in accord with our own repeated decisions. See the late case of *Disano* v. *Brick Co.*, 20 R. I. 452. But the appliance here used, if it was con-

structed as the plaintiff's witnesses testify, is practically condemned by the defendant's own witnesses and shown not to be in common use in well-regulated and well-managed establishments; and hence we fail to see the pertinency of the doctrine as applied to this case.   In short, the law does not fit the case, assuming, as we must, that the jury found the belt to have been fastened with a single lacing through four single holes in each end of the belt.

Whether the belts in the spinning-room were properly inspected from time to time was also a question of fact for the jury under the conflicting testimony bearing upon this branch of the case.

(2)    With regard to the question of inspection, it is pertinent to remark that whether the method adopted by the defendant was sufficient or insufficient, it would not be controlling on this petition for a new trial, for the reason that, although the jury may have found that it was sufficient and proper, yet, as it was competent for them to find negligence on the other and principal ground, which has already been considered by us, it cannot be said that they did not so find.   In other words, two grounds of negligence having been alleged by the plaintiff, either one of which, if made out, would be sufficient to · sustain the verdict in regard to the negligence of defendant, and evidence having been offered *pro* and *con* upon each of said grounds, the court cannot grant a new trial if it can see that one of the grounds is made out, although the other may not be, unless it shall appear by a special finding of the jury that their verdict is based upon a ground which is not sustained by the evidence; and in the case before us there were no (3) special findings by the jury.   It is further to be observed that if the method of lacing employed was wrong, this constituted a defect in construction for which the defendant is liable, and which would not have been corrected by inspection, however frequent; and if this original negligence existed, it was quite immaterial whether the subsequent inspection of the belt was sufficient or insufficient, or whether there was any inspection at all, for the jury could properly have found that the accident was caused by such original negligence.

(4)    But the defendant contends that, even granting that it failed to discharge its duty in regard to furnishing reasonably safe appliances and in properly inspecting the same, the evidence shows that the plaintiff must have known of the danger from the breaking of belts, and hence that she assumed the risk of injury therefrom. The law is doubtless clear that even where a master fails in his duty in respect to repairing and inspecting machinery or appliances to be used by the employee, and the latter, with knowledge of the danger, continues in the employment without objection, he assumes the risk and cannot recover if injured. *Kelley* v. *Silver Spring Co.*, 12 R. I. 112 ; *Disano* v. *Brick Co., supra.* We cannot say, under the testimony in the case at bar, however, that the plaintiff had such knowledge of the defects complained of as to charge her with the assumption of the risk occasioned by defendant's negligence. For, while the defendant has offered considerable testimony to the effect that belts were frequently breaking in the spinning-room where she was employed, she testifies that she was not aware of the fact, and that she never saw but one belt break while she worked there, up to the time of the accident in question. If this was so—and it was for the jury to determine as to her credibility—it cannot be said, as matter of law, that she assumed the risks occasioned by the negligence of the defendant. If the belts were properly laced originally, and, notwithstanding that, they broke from time to time, and the knowledge of that fact was brought home to the plaintiff so that she appreciated the danger, then it might well be claimed. that the risk of injury from such breaking was one of the assumed risks of her employment. Knowledge by the servant of the unsafe condition of appliances which carries, or should carry, to the mind of the servant the danger to which he is exposed is the true test. *Clark* v. *St. Paul Co.*, 28 Minn. 128 ; *Russell* v. *R. Co.*, 32 Minn. 230 ; *Spicer* v. *South Boston Iron Co.*, 138 Mass. 436 ; *Rice* v. *King Philip Mills*, 144 Mass. 229 ; *Murphy* v. *Phillips*, 25 W. R. 647 ; *Wilson* v. *Willimantic Linen Co.*, 50 Conn., 433 ; *Mulvey* v. *R. I. Locomotive Works*, 14 R. I. 204 ; *Pilling* v. *Narragansett Machine Co.*, 19 R. I.

666; *Whipple* v. *R. Co.*, 19 R. I. 587; *Crandall* v. *R. Co.*, 19 R. I. 594; *Laporte* v. *Cook*, 21 R. I. 158; *McDonald* v. *Telegraph Co.*, 22 R. I. 131; Wood Master and Servant, §§ 376, 749, and 764; Thomas on Negligence, p. 851; Buswell on Personal Injuries, § 204; Sherman and Redfield on Negligence, §§ 185, 194a, and 378. If it be suggested in this connection that the evidence shows that the plaintiff must have known of the unsafe condition of the belt in question because she was present when it was laced and saw how it was done, it is sufficient to reply that, so far as appears in evidence, she had no knowledge as to the proper method which should be employed in the doing of such mechanical work, and hence that she assumed no risk occasioned by the negligence of the defendant in this regard. Although it appears that she knew the manner in which it was laced, she did not know it was dangerous. And the court cannot impute knowledge to a girl of seventeen years of age as to a fact which required expert testimony to determine at the trial.

(5)   The first ruling of the trial court which is complained of by defendant is that plaintiff was allowed to introduce the testimony of experts as to the lacing of belts in mills of a different character from the one where plaintiff was employed. The defendant contends that such testimony was not competent, because the difference in the character of the machinery is so great that the testimony was irrelevant. We do not think the court erred in admitting the testimony. The plaintiff was endeavoring to prove that the method of belt-lacing employed by defendant was unskillful and unsafe, and that it was not in common use in well-regulated mills and manufactories, for the purpose of substantiating her charge of negligence against the defendant. And there is no reason why she should be limited to the custom or method adopted in mills or shops precisely similar to that in which she worked. If the belts were differently constructed in different mills, or were subjected to different tension or to different conditions, these things would doubtless affect to a greater or less degree the weight which should be given to the testimony. But we can hardly conceive of there being such a difference between belts

in a machine-shop or ordinary manufactory and those in a spinning-room as to preclude the method of construction in the one case from bearing some fair and reasonable similarity to the method in the other.    And if the evidence offered had any bearing or relevancy, however remote, it was not error to admit it.    The record shows that when the testimony objected to was admitted, the court said :  " The difference between a machine-shop and a woolen-mill will be noted by the jury."

(6)    The defendant contends that the presiding justice also erred in his instructions to the jury, first, in that he granted the following request of the plaintiff :

" In this case it was the duty of the defendant company to use reasonable care in fastening the belt which operated the plaintiff's spinning-frame so that it should not be dangerous to her while working upon it, and, further, to exercise reasonable care and foresight in keeping and maintaining said belt in a safe and proper condition for running said machine ; and if the jury find that said belt was negligently and improperly fastened together at the joint where it broke, then the defendant company would be liable for the consequences of its breaking and injury of plaintiff, if the plaintiff at the time of the injury was in the exercise of due care."

It is argued that this charge wholly overlooks the question as to whether the plaintiff assumed the risk, and hence that it should have been refused.

A single request to charge cannot ordinarily be expected to contain all the law pertinent to a case.    It usually has a bearing only on some particular branch thereof, and if applicable to that branch it is proper to grant it.    The court, in reviewing a particular request to charge, must take it in connection with the charge as a whole ; and if when thus taken it shows that the point omitted in the particular request is fairly covered elsewhere, the fact that it is not also incorporated in the specific request is not error.    In a word, all that either party can reasonably claim is that the court shall instruct the jury in all the law applicable to the case.    An examination of the charge of the court in this case shows that the question of assumed risk was not overlooked.    Referring to the machin-

ery, the court said : "If it is unsafe, if it is dangerous, and the employee knows that to be so, and without protest goes to work upon that machine, then the employee assumes the risk of the occupation and the employer would not be liable." Having thus correctly instructed the jury in the law applicable to this question, the court was not called upon to repeat it by incorporating it in said request to charge. *Kelley* v. *Silver Spring Co.*, 12 R. I. 119.

The third, fourth, and seventh requests of the plaintiff to charge having been excepted to on the same ground, what we have just said is equally applicable to those, and the exceptions must, therefore, be overruled.

It is further urged that the court erred in refusing to instruct the jury as requested by the defendant. The first request which was refused was as follows : " The defendant is bound to give its belts and lacings only such inspection as ordinarily careful manufacturing corporations give under like circumstances." Instead of this the court gave the following : "The defendant corporation is bound to give its belts and lacings such ordinarily careful inspection as circumstances require." It is conceded that the charge as given was a correct statement of the law, so far as it went, but it is urged that the jury should also have been instructed as to what is meant by ordinary and careful inspection. While we see no objection to the request as presented, we cannot say that the refusal to grant it in its exact terms was reversible error. The court had already instructed the jury to the effect that ordinary care must be exercised in the inspection of the machinery and appliances, and this instruction had been given, in view of the fact that the evidence of experts and others had been freely introduced by the defendant regarding the methods of inspection in other mills, for the express purpose of showing that the inspection practiced by defendant was such as was made by ordinarily careful and prudent manufacturers. The court also granted the following request of the defendant bearing upon this question, namely : "If the defendant had reasonably suitable belts and lacings, and reasonably careful inspection, the verdict should be for the

defendant." We think it is apparent, therefore, that the defendant could not have been prejudiced by the failure of the court to particularly define what was meant by reasonable care in the matter of inspection, although the charge would have been more satisfactory if such a definition had been expressly incorporated therein. But, taking the charge in connection with the testimony offered and the whole trend of the case, it is evident that the jury were given to understand that the defendant was only called upon to exercise such a degree of care in inspecting its appliances as persons of ordinary care would have exercised under similar circumstances. See, in this connection, *Wabash Ry. Co.* v. *McDaniels*, 107 U. S. 454.

The defendant's fourth and fifth requests to charge, which were refused, are as follows :

"4th. If belts were constantly breaking in the room where plaintiff worked, and the plaintiff knew of that fact and continued to work there, she assumed the risk of being injured by such breaking.

"5th. If belts were constantly breaking it would be presumed that the plaintiff knew of the fact, and hence assumed the risk, and she cannot recover of the defendant corporation."

The defendant contends that these refusals to charge, coupled with the granting of the plaintiff's sixth request to charge, which is as follows, "Unless the plaintiff had some notice or warning of the weakness in the belt by which she was struck, or such weakness was apparent or might have been seen by her upon a reasonable examination of the belt, she did not assume the risk of injury as one of the ordinary risks of her employment," gave the jury to understand that no matter how open and obvious the danger from belts breaking all around her was, nevertheless that she did not assume the risk unless she knew of the weakness in this particular belt.

We do not think that such an inference would naturally be drawn by the jury. Moreover, as we have said, the court had already charged the jury that the plaintiff assumed all obvious risks, including those caused by the breaking of belts,

if she knew that they were frequently accustomed to break. So that as to said requests, they had already been substantially covered by the charge and did not need to be repeated.

The ninth and tenth requests of the defendant, which were refused by the court, were as follows :

(7)   "9th.   The parents of the plaintiff are responsible for the expenses of sickness, doctor's bills, nursing, medicines, etc., and the mere fact that the parents are poor does not render the plaintiff liable therefor.

"10th.   The poverty of the father, or mother, if the father was dead, would not be sufficient to render the plaintiff liable for necessaries furnished to her ; but a refusal or neglect of the father to furnish necessaries must be shown."

These requests, while they are substantially correct as abstract propositions of law, had nothing to do with the questions at issue, and hence were rightly refused.   No evidence was offered as to the expense occasioned by the plaintiff's injuries, and no claim was made in the declaration or in argument that the defendant was liable therefor.   Moreover, the court expressly charged the jury that the plaintiff could not recover for any such expenses incurred during her minority ; that all she was entitled to was compensation for her personal injury and suffering, and that if they found that she would continue to be disabled and suffer after arriving at majority, they could from that time allow her compensation therefor, and also loss of earnings and reasonable medical attendance.

The eleventh, twelfth, and thirteenth requests to charge were rightly refused, the questions raised not being pertinent to any issue involved in the case.

We cannot say that the verdict is against the evidence.

Petition for new trial denied, and case remanded for judgment.

*John W. Hogan,* for plaintiff.

*David S. Baker, Lewis A. Waterman, Arthur M. Allen,* for defendant.