CORNELIUS WILDER, Appellee, v. THE GREAT WESTERN CEREAL COMPANY, Appellant.

134     451
140     32

Negligence: EVIDENCE. Evidence of the usual and ordinary method
1 of fastening pile drivers is admissible in an action by an employé for injuries alleged to have resulted from negligently fastening it.

Evidence: CONCLUSION: PREJUDICE. Where nothing is involved in
2 the answer of a witness but his own volition it is a conclusion; but, if improperly excluded on that ground no prejudice arises where the matter is afterwards fully gone into with the same and other witnesses.

Negligence: FACT QUESTIONS. Ordinarily questions of proximate
3 cause, assumption of risk and contributory negligence are for the jury, and when properly submitted the finding of the jury will not be disturbed.

**Master and servant:** VICE-PRINCIPAL: NEGLIGENCE. A superintendent of construction work directed to procure a pile driver and arrange the same for use becomes a vice-principal, whose negligence in setting up the machine is that of the master, and the master is liable for an injury to a workman resulting from such negligence.

**Assumption of risk:** INSTRUCTION. The age and experience of a workman are proper matters to be considered in connection with the question of his assumption of risks incident to the use of machinery by which he is injured.

**Personal earnings of minors.** A minor cannot recover for time lost during his minority by reason of a personal injury, as his parents are presumptively entitled thereto.

*Appeal from Webster District Court.*— HON. W. D. EVANS, Judge.

MONDAY, NOVEMBER 19, 1906.

REHEARING DENIED, MONDAY, MAY 20, 1907.

ACTION at law to recover damages for personal injuries received by plaintiff resulting from his being thrown from the ladder of a pile driver operated by defendant, which, it is claimed, was insecurely fastened. Defendant filed a general denial and pleaded assumption of risk by plaintiff. It also pleaded that the negligence, if any, was that of a fellow servant, for which defendant was not responsible. Upon trial to a jury a verdict was returned for plaintiff in the sum of $2,000. which, upon order of the district court, was reduced by a remittitur to the sum of $1,850. for which amount judgment was rendered, and defendant appeals.— *Affirmed.*

*Ryan, Ryan & Ryan,* for appellant.

*Healy Bros. & Kelleher,* for appellee.

DEEMER, J.— Defendant is a corporation engaged in the manufacture of meals. It has a plant at Ft. Dodge,

which is in charge of various superintendents and foremen. Prior to the day when the accident occurred, plaintiff was engaged in work for defendant as a general roustabout. A Mr. Butts employed him, and one Pearson pointed out the kind of work he was to do. At the time of his employment and when he received his injuries he was nineteen years of age. On a Saturday night he was asked by Butts to help one Picord drive piles on the next Sunday, and, pursuant to request, reported for duty on that day. When he arrived the pile driver had already been set, and plaintiff was first engaged in sharpening piles and in moving the driver along on skids. From the uprights, through which the hammer played, was a ladder extending obliquely from toward the top down to the base of the appliance and at the top of these uprights, there was a trip which released the hammer when drawn up. For some reason the superintendent, Picord, in charge of the work, was having the hammer released before it reached the regular trip and he had a man upon the ladder with a crowbar to trip or release the hammer before it reached the top of the uprights. Soon after plaintiff came to work he was directed by the superintendent to relieve the man upon the ladder, to take the crowbar and to release the hammer as directed. Plaintiff went to the top round of the ladder and when the second pile was being driven, Picord, the superintendent, said to plaintiff, " Give her a good strike," which meant that he should allow the hammer to go up as far as possible before setting it free or " pinching it off " as it is called. When this order was given the horses which were drawing the hammer up with a rope and pulley, were driven farther away from the base of the pile driver than usual, and as they were so driven, the pile driver jarred and slipped in some way and the top tipped over toward the south in the direction of the horses, and, as plaintiff released the hammer, it jerked the upright back to the north and threw plaintiff from his position on the ladder to the ground, resulting in the fracture of one of his limbs.

It is claimed that the pile driver was not properly stayed, lashed, and fastened at the bottom, and that it was not sufficiently guyed at the top. Plaintiff testified that he had worked upon this driver three or four days before this accident, and that he did not know how it should have been erected and fastened. · The negligence charged is in defendant's failure to furnish plaintiff a safe place to work, in that the appliance was not properly lashed or attached to stakes or other fastenings, and that there was an insufficient number of guy ropes, and that those in use were not properly fastened.

It does not appear that plaintiff had anything to do with procuring the pile driver, or with setting or caring for the same. His work was in the operation of the machine after it had been placed in position and with the piles which were being driven. Picord was superintending the operation of the pile driver, and was at the head of defendant's construction work. He was directed by one of defendant's superintendents to get the pile driver at the Chicago, Rock Island & Pacific Railroad yard in Ft. Dodge, to set it up and operate it, and to do everything that was proper in the setting up of the machine, and this Picord said he attempted to do. The appliance had but three guy ropes, and it was not lashed or fastened at the bottom. The reason given by Picord for not fastening it there was that it was not customary, and that he did not deem it necessary to do so, and that, if he had thought it necessary, he would have done so. At any rate, what is called the " mudsill " was not lashed down, and the jury was justified in finding that the accident occurred by reason of the failure of defendant's superintendent or foreman to fasten it down. The rope which drew the hammer up through the uprights ran through a pulley at the top, thence passed down the uprights under the ladder to what is called the " southwest corner " of the pile driver, where it passed through another pulley, and was then so arranged as that horses were hitched thereto, and they, by

moving in a southwesterly direction, pulled the hammer to the place where it was to be pinched off. The force thus applied was primarily to the base of the driver and in a southwesterly direction. A jury was justified in finding that the horses, in giving the extra pull, removed the appliance from its foundations and caused it to topple over as plaintiff and other witnesses said it did. There were, as we have said, but three guy ropes, one extending northward from the top of the driver and two to the southward, one southeasterly and the other southwesterly. These ropes were fastened it seems, although there must have been enough play either by reason of their elasticity or otherwise to allow the shifting of the appliance at the top. Picord gave directions as to where the hammer should be pinched off, and gave specific directions at the time the accident occurred, at least the jury was authorized to so find.

We can best consider the main points in the case by here quoting some of the instructions of the trial court which indicate the theory upon which it was tried. They are as follows:

(3)· The relation existing between defendant and plaintiff at the time of the injuries complained of was that of master and servant, or employer and employé. Under the law it was the duty of the defendant, in the first instance, to use ordinary and reasonable care to furnish to the plaintiff a reasonably safe place to work, and reasonably safe tools with which to do the work appointed to him to do; that is to say, that the place, tools, and appliances should be reasonably safe when properly used.

You are instructed that, under the undisputed evidence in this case, the pile driver in use by the plaintiff and his fellow servants was a reasonably safe tool, and the ladder thereon was a reasonably safe place within the meaning of the law. If it be a fact that the pile driver and the ladder thereon became unsafe by reason of plaintiff's or his fellow servant's use of the same in an improper manner, such fact would not show a failure on defendant's part to perform its duty in the respect above stated. But it was also the duty

of defendant to use ordinary and reasonable care to furnish to the plaintiff and his fellow servants, known as the " pile driver gang," such tools, apparatus, and appliances as were ordinarily and reasonably necessary to enable them to use such pile driver in a proper and reasonably safe manner.

Additional instruction.   In response to your request for further instruction of the question propounded by your foreman, I charge you as follows:   That in so far as Picord was engaged in the work of using the pile driver, and the tools and the appliances appurtenant thereto, he was a fellow servant with the plaintiff.   If you find, however, from the evidence that he was charged with the duty, in whole or in part, to procure or prepare the pile driver and the tools and appliances ordinarily and reasonably necessary for its proper use, then, to such extent, he was not a fellow servant, but was a vice principal — that is to say, for such purpose, he stood in the place of his principal, the defendant — and, if he was negligent in respect to such duty, the defendant is chargeable with such negligence.   For instance, as stated to you in the previous instruction, the defendant was charged with the duty of exercising ordinary care to furnish the tools and appliances that were ordinarily and reasonably necessary for the proper and safe use of the pile driver.   Now, if the defendant delegated that duty to Picord, or to any other person, and the duty was not, in fact, performed by the person to whom it was delegated, the failure of such person will be deemed the failure of the defendant, and the neglect of such person the neglect of the defendant; and in such case it is immaterial whether such person was in fact Picord or some other person, but the defendant is not chargeable with Picord's negligence, if any, in so far as he was engaged in the use of such tools and appliances as were actually furnished.

Before returning to these instructions, some of which are criticised, we shall take up some of the rulings on the admission and rejection of testimony.   Plaintiff was permitted to show by various competent witnesses the usual and ordinary method of fastening such pile drivers as the one in question.   This is claimed to have been erroneous.   The authorities seem to

1. NEGLIGENCE: evidence.

hold such testimony admissible. *Anderson v. Railroad,* 109 · Iowa, 524; *Betts v. Railroad,* 92 Iowa, 343; *Austin v. Railroad,* 93 Iowa, 239; *Richardson v. Douglas,* 100 Iowa, 239; Lawson Expert and Opinion Evidence (2d Ed.), 74 and 115, and cases cited. Appellant's authorities upon this proposition are not in point. In one case a defendant was offering to show that it was not negligent because it did as others had done it before. See *Hamilton v. Railroad,* 36 Iowa, 31; *Metzgar v. Railroad,* 76 Iowa, 387.

It is said in argument that plaintiff instead of proving a general custom or usage was permitted to prove particular instances, but the record negatives this claim.

A witness who had testified upon direct examination that defendant had stakes, sledges, and chains near at hand, was asked, on cross-examination by defendant's counsel, if any one could have gone and got the sledges if he had wished and if there was anything to prevent him (witness) from getting them if he had wanted to. This was objected to as a conclusion, and the objection was sustained. As nothing seemed to be involved except the witness's own volition, this was no doubt a conclusion. But whether this be true or not no prejudice resulted for the entire situation was fully disclosed, not only by this witness but by many others.

2. EVIDENCE: conclusion: prejudice.

II. Defendant filed a motion for a directed verdict based upon many grounds, one of which was plaintiff's failure to show that the alleged negligence was the proximate cause of the injury. The matter was clearly for a jury, and with its finding in this respect we are content. Another ground of the motion was that plaintiff had assumed the risk and was guilty of contributory negligence. These, too, were questions for the jury under proper instructions. Such instructions were given and no just complaint is lodged against them in so far as they cover this matter.

3. NEGLIGENCE: fact questions.

III. The main points in the case are the correctness of

the instructions already quoted, and whether or not defendant is to be held responsible for Picord's negligence in fail-

**4. MASTER AND SERVANT: vice principal: negligence.** ing to anchor, guy, or fasten the pile driver. Defendant contends that he was a mere fellow servant of plaintiff for whose negligent acts it was not responsible. On the other hand it is insisted that it was defendant's duty to furnish a safe place to work, and that this duty could not be delegated in such a way as to relieve itself from responsibility. We must assume, if for no other reason, because the trial court so instructed, that the pile driver was a reasonably safe tool, and that the ladder was a reasonably safe place, but it was also necessary for defendant to furnish such tools, apparatus, and appliances as were ordinarily and reasonably necessary to enable the persons engaged in the work to use the pile driver in a proper and reasonably safe manner. There was a conflict in the evidence as to whether defendant did furnish these things, but this was settled, or may have been, by the jury in its verdict. It may be, if the defendant furnished all the necessary appliances for the work, and the accident happened by reason of the neglect of a fellow servant to use them, that defendant would not be liable. This thought was presented by the trial court in its instructions. But in the additional instruction, above quoted, another theory of plaintiff's case was presented, which need not now be restated except in substance. It was to the effect that, in using the pile driver, plaintiff and Picord were fellow servants, but that, if Picord was charged with the duty of procuring and setting the pile driver, and of securing the necessary appliances, he was not then a fellow servant, and that his negligence in these respects would be the negligence of the defendant company. Does this announce the correct rule of law? If it does, then the main proposition in the case is settled in plaintiff's favor. Fairly stated, the question is this: Assuming that Picord was charged in whole or in part with procuring and preparing the pile driver and

tools and appliances ordinarily and reasonably necessary for its proper use, was he, in performing this work, a vice principal or a fellow servant? If the former, defendant would be liable for his negligence; if the latter, then it would not be. The other part of the instruction clearly says that, in so far as plaintiff and Picord were both engaged in the use of the appliance, they were fellow servants, and that defendant was not responsible for Picord's negligence in the use and operation of the pile driver. We have already referred to the testimony showing that Picord was directed to get the pile driver, to set it up, and do everything that was proper to drive the piles in the construction and erection of the appliance. Mention has already been made of the fact that there was testimony to the effect that Picord undertook to perform this work and that he did, according to his testimony, everything which he thought was necessary to secure the pile driver. He testified that he did not intend to lash or fasten it at the bottom because he thought it was not necessary to do so. He did not secure or provide the chains, ropes, stakes, etc., necessary to fasten it at the bottom, if these were necessary. Defendant manifestly delegated this work, which was, as to persons who were to work upon it, and who had no part in the erection thereof, not a fellow-servant duty, to Picord, and as it was clearly a masterial duty, defendant was undoubtedly liable for the negligence of Picord. Plaintiff had nothing to do with the erection and setting up of the pile driver. He went to it after it had been set up, to work upon it and had nothing to do, so far as the record shows, with its construction and erection. He was not then, in this respect, a fellow servant with Picord. For the proposition thus stated, there is an abundance of authority. Indeed, there seems to be scarcely a dissenting note in the cases. Picord, the vice principal, not only failed to secure and make the necessary fastenings, but the plan adopted by him was faulty, or at least a jury was authorized to so find. In such cases the master is clearly responsible.

In *D. Sinclair Co. v. Waddill,* 200 Ill. 17 (65 N. E. 438), we find this announced in the opinion:

The material to be used in its construction was selected and furnished by the appellant company, and *the plan of resting it partly upon the newly constructed embankment or loose dirt and partly beyond that embankment, and of supporting the projecting portion by the lumber provided for the purpose, was that of the appellant company, through its foreman.* It was a question of fact for the jury· to determine whether, under all of the evidence, the structure gave way because it had been imprudently located, *negligently planned,* constructed of insufficient material, or hurriedly and recklessly overloaded,· or whether the defects therein were occasioned by or through the negligence or lack of proper workmanship on the part of appellee. The appellee had neither experience in such work, nor knowledge of what would be required of the structure, and his actions were those of a servant in obedience to the commands of the master. The testimony so far tended to show the injury arose from the negligence of the foreman of the appellant company as to make that a question of fact for the jury — not of law for the court. Nor could the court have properly directed a verdict for the appellant company on the ground the appellee assumed the risk of the peril from which he received his injury. The risks assumed by a servant do not include such as arise from the negligence of the master, nor such as are unreasonable or extraordinary (*City of La Salle v. Kostha,* 190 Ill. 130 (60 N. E. 72), or from those which constitute a temporary peril created by the negligent, positive act of the master (*Fairbank v. Haentzsche,* 73 Ill. 236).

See, also, for a case very closely in point, *Grace & Hyde Co. v. Railroad Co.,* 112 Fed. 279 (50 C. C. A. 239), and *Foley v. Cudahy Packing Co.,* 119 Iowa, 246. From the latter case we quote as follows:

There is also evidence tending to prove that one Blondin was the foreman in immediate charge, and that, on the day of the accident, he was the only person present having charge of the work; that the planks were removed and used else-

where pursuant to his instructions. The witnesses who were workmen at the time testify that they received their orders from Blondin, and that he directed the manner in which the work should be performed. Without further reciting the evidence, we think sufficient appears to warrant the jury in finding that the defendant had delegated the performance of its duty to maintain a safe place to work to Blondin, and that his act in ordering the plank in question removed, was, in contemplation of law, the act of the defendant. The cases cited above in principle support this conclusion. See, also, *O'Neill v. Railway Co.*, 80 Minn. 27 (82 N. W. 1086; 51 L. R. A. 590), and notes; *McMahon v. Mining Co.*, 95 Wis. 308 (70 N. W. 478, 60 Am. St. Rep. 117); *Van Dusen v. Letellier,* 78 Mich. 492 (44 N. W. 572); *Ryan v. Bagaley,* 50 Mich. 179 (15 N. W. 72, 45 Am. Rep. 35); *Railroad Co. v. Peterson,* 162 U. S. 346 (16 Sup. Ct. 843, 40 L. Ed. 994); *Baldwin v. Railway Co.,* 75 Iowa, 297.

*Beresford v. American Coal Co.,* 124 Iowa, 34, also clearly announces the rule. *Fink v. Des Moines Ice Co.,* 84 Iowa, 321, applies the same principle as also do, *Haworth v. Seevers Mfg. Co.,* 87 Iowa, 765; *Arkerson v. Dennison,* 117 Mass. 407; *Higgins v. Williams,* 114 Cal. 176 (45 Pac. 1041); *Blomquist v. R. R.,* 60 Minn. 426 (62 N. W. 818).

The instructions were based upon sufficient testimony and stated correct legal proposition. One of counsel's assumptions to the effect that the court instructed that the pile driver, in the manner it was fastened and used, was a proper appliance is erroneous. The trial court did not so instruct. It did say that the pile driver itself was a reasonably safe tool, and that the ladder was a reasonably safe place to work. But this had no reference whatever to the sufficiency of the fastenings, or to the manner of erection.

IV. In its instructions with reference to waiver and assumption of risk, the jury was invited to consider plaintiff's age and experience, as bearing upon his knowledge of the danger incident to the use of the pile driver in view of the manner in which it was fastened. This was undoubtedly correct.

5. ASSUMPTION OF RISK: instruction.

The whole doctrine of assumption of risk is based upon appreciation of the danger and consent, express or implied, to assume the hazard. Plaintiff's age and experience were to be considered in this connection. The test made by the court was not, however, plaintiff's age in the concrete but abstractly; that is to say, the court left it to the jury to find plaintiff's knowledge from what a person of ordinary prudence of his age and experience should or ought to have known. This was clearly correct.

V. At the time of his injury, plaintiff was a minor, his parents still living. He did not arrive at majority until two years and fourteen days after he received his hurt. The trial court directed the jury to allow him for his loss of time during that period. This was erroneous for the reason that plaintiff's parents were presumptively entitled to his earnings during that time. This was cured, however, by the remittur filed by plaintiff. See *Union Merc. Co. v. Chandler,* 90 Iowa, 650; *Hulburt v. Hardenbrook,* 85 Iowa, 606; *Kliegel v. Aitken,* 94 Wis. 432 (69 N. W. 67, 35 L. R. A. 249, 59 Am. St. Rep. 901). But it is said plaintiff did not remit enough. The evidence clearly shows, however, that plaintiff lost but three months' time, and that he was earning but $1.50 per day. After that he drew his usual wages. The error was fully cured by the reduction of the verdict.

6. PERSONAL EARNINGS OF MINORS.

VI. Lastly, it is argued that plaintiff assumed all risk of the dangers incident to the use of the pile driver. This was a question for the jury and was properly submitted to it. Some other matters are discussed, but they are not of sufficient importance to demand separate consideration. Suffice it to say that no prejudicial error appears.

The judgment must be, and it is, *affirmed.*