JOHN DONNELLY, Appellee, v. FT. DODGE PORTLAND CEMENT CORPORATION, Appellant.

MASTER AND SERVANT: "Safe Place"—Keeping Place Safe—
1 Duty to Maintain Rules. The duty of the master in relation to his servant is:

1. To furnish a reasonably safe place to work.
2. To keep and maintain such place reasonably safe.
3. And he may fail in this duty by adopting an unsafe method of doing his work.

PRINCIPLE APPLIED: Personal injury. Defendant operated cement mill. Rock crusher, 400 feet from quarry, was reached by an inclined track over which cars, operated by electric power, and in connection with a "dolly," conveyed rock. The "dolly" ran on iron rails and was frequently derailed, in which case plaintiff and other employees replaced it on the rails, the motive power being by custom and rule turned off until signal to start was given. The men replacing the "dolly" being down in the quarry out of sight of the engineer at the crusher, signal to turn on the power, after the "dolly" was replaced, was first given by those in the quarry to another employee stationed at a higher altitude, who relayed it to the engineer at the crusher. The system or rule for signalling was by motion or gestures of the hand or arm of the man at the "dolly." At the time of injury the power was, through the negligence of the relay man or the engineer, mistakenly turned on, and plaintiff was injured. The jury could have found: (1) the system or rule for signalling was liable to be uncertain to the relay man, (2) the duty to relay such signals was not specially entrusted to anyone, (3) no particular care was taken to instruct these relay men, and (4) a system of signals by *bells* was practical and safer. *Held*, though

the relay man and the engineer be considered fellow servants of plaintiff, the evidence justified a finding that defendant had failed to adopt such a system or rules of carrying on the business as would furnish and maintain a reasonably safe place in which to work.

MASTER AND SERVANT: Master's Methods—Customary Methods—Competency of Witnesses. On the question whether due care has been exercised by a particular master in carrying on his business, testimony as to the customary method of carrying on such business is competent, and exact duplication of place, business and conditions is not required. It is sufficient if the witness speaks of such sameness of situation and instrumentalities that it fairly appears that the danger to the employee is substantially the same, and that his safety can be guarded by the same safeguards.

PRINCIPLE APPLIED: Defendant adopted a system of hand signalling to govern the operation of a tramway or hoist at its *cement* plant. Witnesses, who had never worked in a cement plant but had worked and observed the work in brick plants, clay and gypsum mills, mines and quarries where tramways and hoists were employed, held competent to testify to the customary method of signalling employed in the operation of such agencies.

MASTER AND SERVANT: Negligence of Master—Negligence of Fellow Servant—Concurrence of. Though the master is not liable to his servant for the negligence of a fellow servant, yet if the master's negligence concurs with the negligence of the fellow servant and *contributes* to the injury, then the negligence of the master becomes proximate. (In instant case, *held*, instruction did not permit plaintiff to recover without showing that defendant's negligence, if any, was proximate.)

MASTER AND SERVANT: Master's Negligent System—Negligent Use of by Fellow Servant—Intervening Cause. A fellow servant's negligence in using or applying the master's negligent system of operation, will not absolve the master from liability, *at least not as a matter of law.*

*Appeal from Webster District Court.*—HON. C. G. LEE, Judge.

TUESDAY, OCTOBER 6, 1914.

REHEARING DENIED TUESDAY, JANUARY 19, 1915.

ACTION at law to recover damages for personal injury alleged to have resulted from the negligence of the defendant.

Verdict and judgment for plaintiff and defendant appeals.—
*Affirmed.*

*Gabrielson & Hemingway,* for appellant.

*Kelleher & O'Conner,* for appellee.

Weaver, J.—The defendant corporation owned and oper-
ated a cement mill and at the time of the accident in question,
plaintiff was one of its employees. In operating the mill, rock
was supplied to its crusher by the use of cars moved by elec-
tric power upon an inclined track from the pit or quarry some
400 feet distant. In connection with this machinery there
was employed a so-called "dolly" or "barney," a counter-
weight of some 700 pounds attached to the cable and mounted
on wheels fitted to a track of iron rails extending along the
incline between and below the rails on which the cars of rock
were hoisted. It is alleged that this dolly was so constructed
that it was easily derailed and, in the operation of the hoist,
was in fact frequently derailed, and it was the custom and
rule observed by the defendant when the dolly became so
displaced to hold the engine and hoist stationary until the
employees charged with such duty should restore it to the
track and give the proper signals for putting the machinery
in motion. It is further alleged that on the day in question
the dolly was derailed and the hoist being stopped to permit
the trouble to be remedied plaintiff with another employee
undertook to replace said weight on its track. While so
employed, he says, the hoist was negligently and improperly
set in motion with the result that his foot was caught and
crushed between the dolly and a mass of rock at the side of
the pit. For the injury thus received he seeks to recover
damages. He charges the defendant with negligence in this
connection as follows: First,—That the premature movement
of the hoist was occasioned by the incompetency and inex-
perience of one Lamphere who controlled the operation of
such hoist and that defendant was negligent in employing

him and permitting him to perform such work; and second,—
That defendant was negligent in the adoption and use of an
inefficient method and system of signalling and because the
method so made use of was not reasonably safe and gave rise
to confusion and rendered the work perilous.

The first charge of negligence the court did not submit
to the jury and the case is to be regarded as presenting only
the issue upon the second specification. At the close of the
plaintiff's case defendant's motion for a directed verdict in
its favor was denied and error is assigned upon the ruling.
The trial then proceeded to a conclusion and there was a
verdict and judgment for plaintiff in the sum of $3,000. To
reverse this judgment defendant has appealed. The errors
relied upon as entitling appellant to a new trial have reference,
first, to the denial of the motion for a directed verdict; second,
the admission of certain expert testimony offered by the
plaintiff; and third, the giving of two certain instructions
hereinafter more specifically mentioned.

I. The motion for a directed verdict raises no question
except the sufficiency of the evidence to
sustain a finding of negligence on the part of
appellant and the further proposition that the
record conclusively shows that the injury com-
plained of was caused by the negligence of a
fellow servant.

1. MASTER AND
SERVANT:
"safe place":
keeping place
safe: duty to
maintain
rules.

We cannot properly burden this decision with a lengthy
or detailed statement of the evidence. It is enough to say that
it tends in some material degree to show that plaintiff was
employed substantially as alleged and that while he was
engaged in replacing the dolly on the track the hoist was
negligently put in motion and he was thereby injured without
contributory negligence on his part. It appears that accord-
ing to the usual methods observed in operating the mill it was
the duty of the person in charge of the hoist to suspend its
movement while the dolly was being adjusted, and to set it
in motion only upon receiving the proper signal from the pit

that the adjustment was complete.   The signal in use at the time was ordinarily given by motions or gestures of the hand or arm of the employee at the dolly.   The situation was such, however, that the operator at the hoist could not see the man in the dolly pit and the signal was relayed by another employee standing at a higher station from which he could be seen both by the man below and by the operator at the hoist.   There was evidence from which the jury could properly find that by reason of the negligence of the man at the top or of the operator at the hoist the machinery was put in motion without waiting for the proper signal from the dolly pit and that plaintiff was so injured without fault on his part.   But this does not, as appellant seems to think, put an end to the case. For even if we assume the correctness of the contention that the operator and the person transmitting the signal were fellow servants of the plaintiff and defendant not therefore liable for their neglect of duty, it does not dispose of the question on which the trial court submitted the case to the jury.   That question was whether there had been any breach of defendant's duty to adopt and maintain a system or rules controlling the operation of its mill and the duties of its employees in such manner as to make and keep the places where labor was required to be done reasonably safe for that purpose.   Upon this proposition there was no such failure of proof as to justify a directed verdict for defendant.   The evidence was such that the jury would be justified in finding that defendant did not exercise due care to prescribe some definite rule or method to make it reasonably certain that the man at the top charged with a responsible duty, on the faithful performance of which the safety of the persons and lives of workmen in the dolly pit depended, should perform it with due care.   The duty of relaying the signals does not appear to have been entrusted to any one person or set of persons in particular but to have been imposed from time to time upon different employees as they might happen to be convenient when the need for such service arose.   Nor does there seem

to have been such manifest care to instruct those placed in that position with respect to the proper method of performing their duties, or the degree of vigilance to be observed therein as to render its reasonable sufficiency a question of law. The same may be said upon the further question whether due care was exercised in the selection and use of a method of hand signalling instead of a system of bells or other mechanical contrivance for conveying information from those in the dolly pit to the operator of the hoist. It was a matter of material dispute in the testimony and its decision was for the jury. It follows, therefore, that if the defendant was fairly chargeable with negligence in any of these respects and such negligence, either of itself alone or in conjunction with the negligence of a fellow servant was a proximate cause of plaintiff's injury without contributory negligence on his part, or if upon any reasonable theory of the case made by the testimony the jury could properly so find, the court did not err in submitting the issue to the jury. There was therefore no error in refusing to peremptorily direct a verdict.

II. The testimony, to the admission of which exception was taken, was that of four witnesses who testified as to the usual method of signals employed in the operation of hoists on tramways and through shafts. None of the witnesses had worked in a cement making plant but each had considerable experience in brick and tile plants, in clay mills and gypsum mills and in mines and quarries where the system or method of elevating or moving cars over tracks and tramways by the use of hoists was employed. They also testified to having had occasion to observe the manner of signalling in other similar mills, mines and quarries. These witnesses unite in saying that signalling by the use of bells is the system generally in use. Appellant concedes that testimony as to the usual and customary method of carrying on the work and giving signals is competent evidence but insists that to be admissible in this case it must be limited to methods or customs

2. MASTER AND SERVANT: master's methods: customary methods: competency of witness.

which prevail in plants or works or employment similar to the one in which plaintiff was engaged at the time of his injury.  The rule stated may be conceded for the purposes of this appeal, but similar circumstances or similar conditions do not necessarily mean like circumstances or like conditions.  It rarely if ever happens that the place of an accident or the circumstances or conditions attending and surrounding it are an exact duplication of those in another case, but if there is such nearness or approach to likeness of situation and instrumentalities that intelligent and impartial jurors may fairly find that the danger to which the employee is exposed is substantially the same in all and that his safety or protection therefrom may be reasonably affected by the use of like expedients and methods, testimony concerning the same becomes pertinent upon the question of due care.  Electric hoists operating tramways upon an inclined plane are not found alone in cement mills and the fact that cars are often operated thereon from such a distance or under such circumstances as to require some system of transmitting signals from workmen at the remote end of the tram to the operator of the hoist may as well occur in a brick and tile plant or a gypsum mill as in a mine or quarry or cement mill, and while the fact that a particular system of signalling may be practically universal in such establishments does not make the failure to adopt it in any one instance negligence as a matter of law, it is still a circumstance which the jury may consider in determining whether due care has been exercised.  Quite in point upon this proposition are *Richardson v. Douglas,* 100 Iowa 239, 241; *McGar v. Worsted Mills* (R. I.) 47 Atl. 1092, 1095; 3 *Labatt's Master & Servant* (2d Ed.), p. 2558; *Hall v. R. R. Co.,* 140 Iowa 30, 32; *Wilder v. Cereal Co.,* 134 Iowa 451, 456.  It may be added that there appears to have been no other cement mill or mills in that neighborhood.

There was no error in the admission of the testimony to which plaintiff excepts.  None of the authorities cited by

appellant is out of harmony with the view we have here expressed.

III. Objection is raised to the statement of law made by the court in the sixth and eighth paragraphs of its charge to the jury. In the sixth paragraph after defining proximate cause the court said to the jury:

**3. Master and Servant: negligence of master: negligence of fellow servant: concurrence of.**

"If you believe in this case that the plaintiff was injured and that the system of signaling adopted by the defendant was negligent and unsafe, and it is further shown by a preponderance of the evidence because and on account of said unsafe system of signaling that the dolly was started as charged and caused the injury to the plaintiff, then you will find that said negligence was the proximate cause of plaintiff's injury. But if the injury to the plaintiff was caused in some other way not concurrent with the system of signaling and contributed to by the same, then the negligence of defendant, if you find it was negligent, would not be the proximate cause of plaintiff's injury, and he cannot recover."

The eighth paragraph having first stated that the master is not liable to a servant for injuries occasioned to him by the negligence of a fellow servant, proceeds as follows:

"In this case if you believe that the plaintiff and the man referred to as the Austrian by the name of Tony were engaged together in work, and the injury of which the plaintiff complains was inflicted by reason of the failure of the said Austrian to exercise ordinary care independent of any negligence on the part of the defendant, then plaintiff cannot recover. But even though said Austrian was negligent, and you further find that defendant was negligent in the respects charged, and such negligence of the defendant concurred with and contributed to the injury of which plaintiff complains, then you will find that the said injury was caused by the

negligence of the defendant, and not by the negligence of a fellow servant.''

The exception taken to these instructions stated in the language of counsel is that the law as there laid down ''allowed plaintiff to recover without showing and without being required to show that defendant's negligence was the proximate cause of the injury.'' If the charge of the court is justly open to the criticism then it is, of course, erroneous but as we read its language it was not intended to convey the meaning which counsel attribute to it but on the contrary it fairly expresses the correct thought that if the negligence of the defendant was the proximate cause or *a* proximate cause of plaintiff's injury then the further fact, if shown, that the negligence of a fellow servant concurred with that of the master in producing such injury would not excuse the latter from liability. This we think is correct. Of two causes of a given effect both may be proximate; or if it be argued that there can be but one proximate cause, it is then obviously true that two or more causes originating separately in the negligence of master and servant may so concur or unite in operation and effect as to be together the proximate cause of an injury. *Gordon v. R. R. Co.*, 129 Iowa 747, 753; *Pool v. R. R. Co.*, 58 Pac. 326; *Gardner v. Separator Co.*, 134 Iowa 6.

In such case neither party so in fault can point to the other's negligence and ask to be released from responsibility on that account. Of course it must appear that the negligence which is made the basis of recovery was such that without it the particular injury in question would not have occurred, and taking the instructions as a whole the jury must have so understood. Proximate cause was properly defined and the jury told that to justify a recovery it must be found not only that defendant was negligent as charged but that such negligence was the proximate cause of plaintiff's injury. The phrase ''concurrent negligence'' employed by the court is criticised by counsel as misleading because, it is said, the word

"concurrent" has reference solely to time and two acts of concurrent negligence may or may not both be the immediate or proximate cause of an injury. Whatever truth there may be in the abstract statement of the principle thus relied upon, it is without force as applied to the court's charge; for, as we have already said, the jury were carefully charged that without proximate connection between the negligence charged and the injury suffered, there could be no recovery. The word concurrent as there employed clearly has reference to the negligent acts or omissions of different persons operating together to produce an injury which without such concurrence would have been avoided. We find no error in the instructions.

It is further argued that even if appellant was negligent as charged, the act of the fellow servant in giving the signal prematurely was an independent intervening cause and there can be no recovery. It is sufficient to say in this respect that the verdict returned negatives the existence of an independent intervening cause of the injury as a question of fact and certainly no such clear case is made by the evidence that we can find it established as a matter of law. Assuming that a negligent system of operating the mill is found by the jury it would be a singular perversion of justice to hold that a fellow servant's negligence in using or applying such negligent system has the effect as a matter of law to absolve the master from liability. Bearing upon this feature of the case see in addition to precedents already cited, *Hunter v. Tile Co.*, 156 Iowa 257; *Klaffke v. Axle Co.*, 125 Iowa 223; 4 *Labatt's Master & Servant* (2d Ed.) pp. 4082, 4083 and 4087.

4. MASTER AND SERVANT: master's negligent system: negligent use of by fellow servant: intervening cause.

We find no authority to the contrary.

Finding no error requiring another trial of the issues, the judgment below is—*Affirmed*.

LADD, C. J., EVANS and PRESTON, JJ., concur.